(Filed 12th June, 1889.)

---

ELIZABETH C. ATTRILL *vs.* COLLIS P. HUNTINGTON.

*Corporations—Officers—Swearing falsely to a Certificate— Penal statute—Foreign judgment—Statute of Limitations— Demurrer.*

A statute of the State of New York (1875, ch. 611, sec. 21,) provides that, "if any certificate or report made, or public notice given, by the officers of any such corporation, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof." HELD:

1st. That the liability imposed by this statute was a penalty, and could not be enforced in the State of Maryland.

2nd. That no action could be maintained in Maryland, upon a judgment recovered in New York for such penalty.

The Maryland Statute of Limitations may be pleaded in bar to the recovery in this State, against a stockholder of a New York corporation, for a debt of the corporation, for which such stockholder is made liable by the laws of New York, and this defence may be availed of on a demurrer.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order of the Court below (DUFFY, J.,) overruling the demurrer of the de-

fendant, Elizabeth C. Attrill, to the plaintiff's bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, BRYAN, and McSHERRY, J.

*William A. Fisher,* and *S. Teackle Wallis,* for the appellant.

*Hugh L. Bond, Jr.,* and *John K. Cowen,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

Collis P. Huntington filed a bill in equity to set aside certain transfers of stock made by Henry Y. Attrill. They were made to himself as trustee for his wife and daughters. The present appeal involves the stock transferred for the benefit of Elizabeth Attrill, the appellant, who is one of his daughters. It is alleged in the bill of complaint that Attrill made these transfers of stock without valuable consideration, and with intent to delay, hinder and defraud his creditors, and especially the complainant, who is alleged to be a creditor. The bill is filed by the complainant in his own behalf to procure the payment of his own debt. No other creditor has been made a party to the suit, and no claims against this stock are presented for adjudication, except those asserted by the complainant in his own interest. The bill shows that the complainant in June, 1886, recovered against Attrill and one Soutter a judgment for nearly a hundred thousand dollars in the Supreme Court of New York for the County of Kings. And it is alleged that the cause of action, on which the judgment was rendered arose in June, 1880, and was in this wise: that a certain corporation had

been formed under the laws of New York, entitled "The Rockaway Beach Improvement Company, limited," of which the said Attrill was an incorporator and director; that the complainant loaned the said corporation one hundred thousand dollars to be repaid on demand; that only nine hundred and thirty-two dollars of this sum had been repaid; that the amount of the capital stock of the corporation was seven hundred thousand dollars; that Attrill, as director of the corporation, signed and verified by his oath a certain certificate under the statutes of New York, stating that the full amount of the capital stock of the corporation, to wit, the sum of seven hundred thousand dollars, had been paid in; that said Attrill when he signed and swore to said certificate knew that it was false; and that the law of New York made Attrill liable to pay the debts of the corporation by reason of his making under oath said false certificate. An exemplification of the judgment was filed with the bill of complaint. It showed that judgment was demanded and obtained against Attrill and Soutter on the ground that they had made the false certificate under oath. We were informed at the argument that, by agreement of counsel, the New York statute was to be considered as set forth in the bill. A demurrer was filed by the defendant, which was overruled by the Court below.

The twenty-first section of the statute is in these words: "If any certificate or report made or public notice given by the officers of any such corporation, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof." *Act of* 1875, *chapter* 611, (*New York.*) For doing any of these forbidden acts, the officers of a corporation are made liable for its debts. No inquiry is to be made whether

Attrill *vs.* Huntington.

the creditor has been deceived and induced by decep-
tion to lend his money, or to give credit; or whether
he has incurred loss to any extent by the inability of
the corporation to pay; nor is the recovery limited to
the amount of the loss sustained. All that is necessary
to show is that the act has been committed, and there-
upon any creditor is entitled to recover the full amount
of his debt. In an action for an injury to the person
or property of an individual, it must be first shown
that his rights have been invaded, and then the extent
of the damage must be shown. It is true that in some
cases the law allows a recovery far beyond the amount
of actual damage; as where the injury was inflicted
from fraudulent or malicious motives. But in these
cases the recovery is founded on the injury to rights of
person or property, and the circumstances which justify
an exceptional measure of damages must be proved in
evidence. There is a very marked and obvious differ-
ence between these cases, and a case where a statute
enacts that because of the commission of a certain act,
without reference to any other circumstance, a party
shall incur a liability. Because thou hast done this
thing, thou shalt pay the debts of another. It is ex-
tremely difficult to conceive that the statute was not
intended to provide a punishment for the obnoxious
acts. The payment of a sum of money, which a party
would not otherwise be obliged to pay, is no less a
punishment, because it is inflicted through the medium
of a civil suit instead of criminal prosecution. And
such has been the uniform opinion of the Courts of the
State where this statute was enacted. In *Merchants'
Bank vs. Bliss*, 35 *N. Y.*, 412, an action was brought
against the defendants, as trustees of a corporation
created under the general Act of 1848, to recover a
debt due to the plaintiffs from the corporation; and
the question was whether the action was barred by

Attrill *vs.* Huntington.

limitations. The Code prescribed six years as the period of limitations, where the action was upon a liability created by statute other than a penalty or forfeiture; and three years for "an action upon a statute for a penalty or forfeiture, where action is given to the party aggrieved." The defendants were alleged to be liable under the twelfth and thirteenth sections of the Act. The twelfth section required every corporation organized under the Act to make a report annually within twenty days from the first of January, stating the amount of capital, and the proportion actually paid in, and the amount of existing debts; and provided that "if any of said companies shall fail so to do, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made:" The thirteenth section enacted that "if the trustees of any such company shall declare and pay any dividend, the payment of which would render it insolvent, or which would diminish the amount of its capital stock, they shall be jointly and severally liable for all the debts of the company then existing, and for all that shall thereafter be contracted while they shall respectively continue in office." We will quote somewhat freely from the opinion of the Court: "Under these sections, the trustees are declared to be jointly and severally liable for all the debts of the company, in case of a violation of their provisions. The liability, it must be observed, is not limited to the injury or damage sustained by the creditors in consequence of the violation, but upon failure to file the report, or upon making a prohibited dividend, however small or trifling the amount, the trustees are subjected to the payment of the whole amount of the debts of the company then existing, and for all that shall be contracted, in the one case before the report

shall be made, and in the other while they shall respectively continue in office. These provisions appear to be severely punitive, inflicted on grounds of public policy, for the protection of creditors, and the prevention of frauds upon the public in respect to the financial condition of such corporations. It is clear that the liability of the trustees is not imposed as an indemnity, because it has no relation to the actual loss or injury sustained by the party in whose favor the action is given. The action depends wholly upon the statute. There never was any such remedy, or cause of action, in whole or in part, at common law. If any action could have been maintained at common law, for either of the causes mentioned in sections 12 and 13 of the General Act, in relation to manufacturing corporations, it could extend only to the actual damages or injury sustained. But those elements have nothing to do with the actions given by these sections. Nor, indeed is it necessary that the creditor should have sustained any injury or damage by reason of a violation of those sections. It is sufficient that the party prosecuting the action should be a creditor when the violation of the law takes place. The right of action is given to the creditors and they must be held to be the parties aggrieved. For these reasons, I am satisfied that the sections 12 and 13 impose a penalty, or a disability in that nature, to which the shorter limitation of three years applies." In *Stokes vs. Stickney, et al.*, 96 *N. Y.*, 323, this decision was fully approved. Referring to what was said in reference to the twelfth section, the Court said: "Since that decision the subject of actions under that section of the statute has frequently been under the consideration of this Court, with the uniform conclusion that the actions therein provided for are penal in their character, and are not in any respect based upon the theory of affording compensation to the

injured party for damages sustained by reason of the omission complained of;" and they quote a number ·of decisions of their own Court. In this State in construing a similar provision in a statute, it was held: "that the liability of the director was not one arising upon contract, but one imposed upon him by the statute as a wrong-doer, and therefore in the nature of a penalty." *First National Bank of Plymouth vs. Price, et al.*, 33 *Md.*, 498. Section 10 of the New York Act of 1848, makes the stockholders of every company incorporated under its provisions individually liable to the creditors of the company in a sum equal to the amount of their stock, until the whole of the capital stock is paid in and a certificate thereof is made and recorded. A distinction is well established by the decisions between this liability, and that imposed by the twelfth section of the Act. In the former case the statute withdraws from the stockholders the protection of the corporate character, and leaves them liable as co-partners to the amount of their stock; in the latter case the liability is created by statute, and is in the nature of a penalty imposed for neglect of duty. *Wiles, et al. vs. Suydam*, 64 *N. Y.*, 176. The distinction is mentioned in the *Plymouth Bank case*, 33 *Md.*, and many cases are there cited which maintain it. It is also approved by the Supreme Court of the United States in *Flash vs. Conn*, 109 *U. S.*, 371, and *Chase vs. Curtis*, 113 *U. S.*, 452, and in *Norris vs. Wrenschall*, 34 *Md.*, 492, but in this last case all the reasoning and illustrations of the New York cases are not adopted.

We think that we must hold that the liability imposed by the twenty-first section of the New York Act of 1875 is a penalty. If this be so, it cannot be enforced in this State. Upon this point the authorities agree with great harmony. In the case of the Plymouth Bank this Court said: "it is well settled that no State

will enforce penalties imposed by the laws of other
States; such laws are universally considered as hav-
ing no extra-territorial operation." The same doc-
trine has recently been declared by the Supreme Court
of the United States. *Flash vs. Conn,* 109 *U. S.*, 376;
*Wisconsin vs. Pelican Insurance Company,* 127 *U. S.*,
290. We must, however, notice the fact that a judg-
ment has been obtained for this penalty. A judgment
merges the original cause of action, so that a suit
cannot be again maintained upon it; it is also con-
clusive evidence of its existence in the form, and under
the circumstances stated in the pleadings. In the
classification of legal subjects, it is called a debt of
record; because of the obligation to pay it, which is
imposed on the party against whom it is rendered.
But the nature of a transaction is not changed by the
reduction of it to a judgment. If we could suppose
that a judgment was obtained on a contract to com-
mit murder, would any one maintain that the judg-
ment had removed the turpitude of the contract?
Or, that the law would mitigate its condemnation of
a grievous crime, because of a change in the form with
which it was clothed? It is unnecessary to pursue
this subject, because the Supreme Court of the United
States has recently decided the question here presented.
In *Wisconsin vs. Pelican Insurance Company,* 127 *U. S.*
*Reports,* 292–293, a suit was brought on a judgment for
a penalty, and it was decided that the judgment in its
"essential nature and real foundation" was the same
as the original cause of action, and that a suit could
not be maintained upon it beyond the limits of the
State in which it was rendered.

It is alleged in the bill of complaint that the above
mentioned corporation was dissolved in March, 1882,
by a judgment of a Court in New York; that at the
time of its dissolution it "was indebted to the plain-

Attrill *vs.* Huntington.

tiff and to other creditors to an amount far in excess of its assets; that by the law of the State of New York, all the stockholders of the company were liable to pay all its debts, each to the amount of the stock held by him, and the defendant, Henry Y. Attrill, was liable at said date, and on the 14th day of April, 1882, as such stockholder, to the amount of three hundred and forty thousand dollars, the amount of stock held by him, and was on both said dates also severally and directly liable as a director, having signed the false report above mentioned, for all the debts of said company, contracted between the 26th day of February, 1880, and the 29th of January, 1881; which debts aggregate to more than the whole value of the property owned by said Attrill." This liability is asserted to exist independently of the judgment. It cannot be maintained on the New York statute already mentioned, because by the twenty-fifth section, a stockholder is not personally liable for a debt of the corporation, except in cases where an action to recover it has been brought against the corporation within two years after it became due; and here no such action has been brought. The judgment against Attrill for having made the false report certainly merges all right of action against him on this account. But let us assume that Attrill was liable at the times mentioned in this clause of the bill of complaint, and on the grounds therein stated. This liability is barred by the Maryland Statute of Limitations, and this defence properly arises under the demurrer filed in this case. *Belt vs. Bowie,* 65 *Md.,* 355.

Upon the whole, it appears to us that the complainant has no cause of action, which he can maintain in this State.

*Order reversed, and*
*bill dismissed.*

(Decided 8th February, 1889.)

STONE, J., filed the following dissenting opinion, in which McSHERRY, J., concurred:

It is with some diffidence that I venture to differ in this case from the majority of the Court. I look upon the principal point as a Federal question, and am governed in my views more by my understanding of the decisions of the Supreme Court of the United States, than by the decisions of the State Courts.

The Act of Congress made in pursuance of the Constitution, provides, that the judgments rendered by the State Courts "shall have such faith and credit given to them in every Court within the United States, as they have by law or usage in the Courts of the State from whence said records are, or shall be taken."

Notwithstanding the comprehensive language here used, several limitations have been made by the decisions of the Supreme Court to the effect of such judgments. The only one necessary to mention, and which affects this case is that stated by Judge MARSHALL in the case of *The Antelope,* 10 *Wheat.,* 123, that "The Courts of no country execute the penal laws of another."

I concede to the fullest extent that rule, but the question remains what are the *penal* laws of a State, and does this case come properly within that rule?

In the case of *Wisconsin vs. Pelican Insurance Company,* 127 *U. S.,* 265, the State of Wisconsin instituted suit in the Supreme Court of the United States upon a judgment recovered in one of her own Courts against the Pelican Insurance Company, a Louisiana corporation, for penalties imposed by a Wisconsin statute for not making the returns to the insurance commissioner as required by law. By the Wisconsin statute every foreign insurance company doing business in that State was required to deposit in January of each year in the office of the insurance commissioner a statement of the business of the corporation, and in default

Attrill *vs.* Huntington.

thereof it should forfeit five hundred dollars a month, for every month it should continue to do business after such default, and it was made the duty of the insurance commissioner to institute suit for such forfeiture in the name *of the State*, and *one-half* of the sum recovered by such suit was to be paid into the State treasury, and the other half to the insurance commissioner to pay the costs.

Under this Act a judgment was recovered by the *State of Wisconsin* against the Pelican Insurance Company, which the State attempted to enforce in the Supreme Court by action brought there.

This the Supreme Court decided could not be done, and says in the decision :

"The statute of Wisconsin, under which the State recovered in one of her own Courts the judgment now here sued on, was in the strictest sense a *penal statute*, imposing a penalty upon any insurance company of another State, doing business in Wisconsin without having deposited with the proper officer of the State a full statement of its property and business during the previous year. *The cause of action was not any private injury, but solely the offence committed against the State by violating her law.* The prosecution was in the name of the State, and the whole penalty, when recovered, would accrue to the State, and be paid, one-half into her treasury, and the other half to her insurance commissioner, who pays all expenses of prosecuting for and collecting such forfeitures. It is immaterial whether, by the law of Wisconsin, the prosecution must be by indictment or by action. In whatever form the State pursues her right to punish the offence against her sovereignty, every step of the proceeding tends to one end, the compelling the offender to pay a pecuniary fine by way of punishment for the offence."

The Court in the same case also says : "The rule that the Courts of no country execute the penal laws of

another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits *in favor of the State* for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue or other municipal laws, and to all judgments for such penalties.''

It will be readily seen from these extracts that the Supreme Court in this opinion, so much relied on, does not extend the rule, that no country will execute the penal laws of another, beyond suits brought in *the name of the State* for the recovery of penalties for an infraction of its revenue or municipal laws, and was careful to state in the paragraph just quoted that the cause of action was not any *private injury* but *solely* the offence committed *against the State.*

I think the cause of this careful definition of what actions come within the rule, can easily be found in the previous decision of the same Court.

By a statute of Connecticut, it was provided that the president and secretary of each corporation organized under their law, should annually in January and July make a statement of its affairs and deposit it with the town clerk, and if that duty was *intentionally* neglected, or refused to be performed, the officer so neglecting should *be liable for all debts* of the corporation contracted during the period of such neglect.   A creditor of a corporation sued the president under this Act for a debt due to him by the corporation, in the Circuit Court of the United States, and the case (*Steam-Engine Co. vs. Hubbard,* 101 *U. S.,* 188,) went eventually to the Supreme Court of the United States.   In deciding the case the Supreme Court said, *that the statute was penal and must be strictly construed,* but affirmed the judgment of the Circuit Court upon the ground of *insufficient* proof against the president.

So in *Chase vs. Curtis,* 113 *U. S.,* 452, the action was brought in the Circuit Court of the United States,

upon a judgment recovered by the creditor of a corporation against the trustees of a corporation, and the facts are somewhat similar to those in the Connecticut case.  By a statute of New York the trustees of certain corporations were required to file reports of the condition of such corporations, and upon failure to do so, the trustees were made liable for the debts of the corporation.  'Suit was brought against trustees and judgment was recovered.  Action was brought on that judgment and the case went to the Supreme Court.

That Court decided that the *action was penal and must* be construed strictly, and decided that the judgment itself was not in that case sufficient evidence of the debt, and judgment was given for defendants.

One purpose for which I have cited these cases is to show the different meanings that the Supreme Court has given to the word *penal.*  In the two last cited cases the Supreme Court declared in unmistakable terms, that the statutes under which the cases were brought were *penal* statutes, and must be construed strictly, and yet they entertained jurisdiction and decided the cases upon their merits.  In the case just cited 127 *U. S.*, the Court said that the statute was *penal* and refused to entertain jurisdiction.  That Court evidently used the term *penal* in two different senses.  The term penal seems to be applied rather indiscriminately to both *criminal* and civil laws, but I think that Court has given us a rule by which we can determine what cases come within the rule that no country will execute the penal laws of another.  It says in the citation from 127 *U. S.*, heretofore given, that the rule covers crimes and misdemeanors, and actions brought *by the State for an infraction of its laws.*  But where the State law gives an *individual* the right to recover damages or claims for the non-observance by other individuals or corporations of its laws, such infractions do not come within the rule.

But it is argued that the case of *First National Bank of Plymouth vs. Price, et al.,* 33 *Md.,* 498, is decisive of this, and although this suit is upon a judgment, and Price's case was not, that the essential nature of a case is not changed by a judgment. I think the determination in Price's case was correct, although I think the reasons assigned are not in accord with the decisions of the Supreme Court. I think the decision in Price's case correct, because no State is bound by the rules of comity or convenience to try cases *ex delicto* arising under purely local statutes of another State, and unknown to the common law, and that was Price's case.

I think the Supreme Court in 127 *U. S.,* meant to confine the operation of the rule that no country will execute the penal laws of another, to such laws as are properly classed as *criminal.* It is not very easy to give any brief definition of a criminal law. It may perhaps be enough to say that in general, all breaches of duty, that confer no rights upon an individual or person, and which the State alone can take cognizance of, are in their nature criminal, and that all such come within the rule. But laws which, while imposing a duty, at the same time confer a right upon the citizens, to claim damages for its non-performance, are not criminal. If all the laws of the latter description are held penal, in the sense of criminal, that clause in the Constitution which relates to records and judgments is of comparatively little value.

There is a large, and constantly increasing, number of cases that may in one sense be termed penal, but can in no sense be classed as criminal. Examples of these may be found in suits for damages for negligence in causing death, for double damages for the injury to stock, where railroads have neglected the State laws for fencing in their tracks, and the liability of officers

of corporations for the debts of the company by reason of their neglect of a plain duty imposed by statute.

I cannot think that judgments on such claims are not within the protection given by the Constitution of the United States.

I therefore think the order in this case should be affirmed. I have merely ventured to state my conclusions without any attempt whatever at an elaborate argument or citation of authorities. These views have been I think sustained by several of the State Courts, but I have only thought it necessary to refer to the decisions of the Supreme Court, as I think the question a Federal one.

(Filed 8th February, 1889.)