JOHN LAMBROS *v.* CAPTAIN H. F. BROWN, ET AL.

[No. 5, January, Term, 1945.]

*Decided January 31, 1945.*

The causes were argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Charles T. Le Viness,* with whom were *Harry E. Silverwod, George A. Mahone* and *Merton S. Fales, Jr.,* on the brief, for the appellant.

No appearance and no brief for the appellees.

Brief for Chester Bowles, Price Administrator, *amicus curiae,* filed and submitted.

MARBURY, C. J., delivered the opinion of the Court.

Two appeals are here considered. Both are by the same appellant from judgments similarly entered against him in the Baltimore City Court, heard there on appeals from the People's Court of Baltimore City. Both cases involve the jurisdiction of the Maryland civil courts to enforce the provisions of the Emergency Price Control Act of January 30, 1942, c. 26, 56 Stat. 23, 50 U. S. C. A. Appendix, Sec. 901 et seq.

Appellant kept a store in Baltimore City, and had a license to sell liquor. The appellee Brown made two separate purchases, each of one-fifth of a gallon of whiskey, from him, being charged for each purchase the sum of $3.94. The maximum prices established by the Office of Price Administration for the brands purchased and in force at the time of the purchases, were $3.30 and $3.44. Brown was therefore overcharged 64 cents on one purchase and 50 cents on the other. The appellee Waldman bought one-fifth of a gallon for $3.85. The maximum price on this was $3.44, so he was overcharged 41 cents. Section 205 (e) of the Emergency Price Control Act permits a buyer to recover either $50 or treble the amount of the overcharge, whichever is the greater. Brown was given a judgment in the People's Court for $100 and Waldman a judgment for $50. Both cases were appealed, and, after trial *de novo* in the Baltimore City Court, judgments in the same amounts were entered there against the appellant. From these judgments, he has appealed.

Appellant contends that these appeals are properly before this Court because they involve the jurisdiction

of the People's Court of Baltimore City and of the Baltimore City Court. He raised this question, in each case in the Baltimore City Court, by a motion for a reversal of the judgment entered in the People's Court. His motions were overruled, and exceptions were allowed him. The ground of each of the motions was the claimed lack of jurisdiction, because the cause of action was penal in nature, and the Court had no authority to enforce a penalty provided by Act of Congress.

Appeals from judgments of the People's Court of Baltimore City are to the Baltimore City Court under the provisions of Article 5, Section 93 of Flack's Annotated Code of Public General Laws, 1939. The Baltimore City Court acts in such cases in an appellate jurisdiction, and there is no further appeal to this Court. An exception, however, is made in cases where the jurisdiction of the magistrate (in this case the People's Court) or of the Court is attacked. The method of raising such jurisdictional question seems to have varied. In some of the cases, it was done by a writ of *certiorari* directed to the magistrate, and by an appeal to this Court from the decision of the lower court on that writ. Such cases are *Hall v. State*, 12 Gill & J., 329; *Rayner v. State,* 52 Md. 368, 376; *Rehm v. Cumberland Coal Co.,* 169 Md. 365, 181 A. 724. In other cases there was a direct appeal to this Court without any special procedure in the lower court, and this court considered the jurisdictional question. See *Mears v. Remare,* 33 Md. 246; *Wilmer v. Mitchell,* 122 Md. 299, 89 A. 612. In still other cases the question was raised, as here, by a motion to quash the action of the justice of the peace. Such cases are *Cole v. Hynes,* 46 Md. 181; *Shippler v. Broom,* 62 Md. 318, 319; and *Josselson v. Sonneborn,* 110 Md. 546, 73 A. 650, 652. This Court in the last case said that the method there, and here, used was "an appropriate method to have the question of jurisdiction of the lower court determined." The question of the jurisdiction of the People's Court and of the Baltimore City Court in the instant case is, therefore, before us on these appeals.

Appellant also contends that he was summoned to the September, 1944 Term of the Baltimore City Court, that he was compelled to try the cases in the May Term, and that the court had no right to advance them, and to compel him to go to trial at an earlier date, when he was unable to be present in person, and give his testimony. He cites the provision of the Code of Public General Laws, 1939 Ed., Article 5, Section 97 and of the Code of Public Local Laws (City Charter, Sec. 414, 1938 Ed.) as authority for his contention. But whatever may have been his rights not to have his cases advanced, he does not here present a jurisdictional question. The Baltimore City Court had jurisdiction over appeals from the People's Court, and had jurisdiction over the appellant. If the Court had no discretion to advance the cases, or improperly exercised its discretion to his detriment, we cannot review that action on these appeals. Here, we have before us, on appeals such as these, only jurisdictional questions. *Randle v. Sutton,* 43 Md. 64; *Shippler v. Broom,* 62 Md. 318, 319. We cannot, in these cases, pass upon the use or abuse of the discretion of the Baltimore City Court, and, therefore, we refrain from any comment on that subject.

The Emergency Price Control Act of 1942 was passed by Congress "in the interest of the national defense and security and necessary to the effective prosecution of the present war." The purposes of the Act are stated therein to be "to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents," etc. The Act creates the Office of Price Administration which is under the direction of a Price Administrator, who has power by regulation or order to establish maximum prices for commodities. Various methods of enforcement are provided, such as enjoining orders or restraining orders upon application of the Administrator, and criminal prosecution. Section 205 (c) of the Act provides: "The district courts shall have jurisdiction of criminal proceedings or violations of Section 4 of this Act, and, concurrently with State and Territorial courts,

of all other proceedings under Section 205 of this Act (this section). * * *" Section 205(e), as it was in force at the time of the sales in the instant case, provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court." And further: "Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid."

The People's Court of Baltimore City is a civil court established by the Constitution, Article IV, Part V-A. Its jurisdiction includes civil suits which involve amounts equal to those sued for in the instant cases. Appeals from its judgments are made to the Baltimore City Court, which is one of the civil law courts of Baltimore City. The People's Court of Baltimore City and the Baltimore City Court are, therefore, state courts of competent jurisdiction, to entertain suits of the general nature of those before us.

The appellant, however, says that the state courts of Maryland lack jurisdiction to impose or enforce penalties when such penalties are created by Act of Congress. His claim is that the excessive damages in these cases amount to penalties, that such excessive damages in contract suits are against the public policy of this State, and, hence, are unenforceable in our courts. The Administrator of the Office of Price Administration, by leave of court, filed a brief as *amicus curiae*. He answered appellant's contentions by the statements that a consumer or tenant action under Section 205(e) of the Emrgency Price Control Act is remedial and not penal in its nature. He further contends that even if such

action is held to be penal, it is not one authorized by the laws of a foreign State, but is one authorized by the laws of the United States, which is not a foreign sovereignty as respects the several States of the Union.

There is ample authority, both in this Court, and in the Supreme Court of the United States, for the doctrine that competent state courts should take jurisdiction of suits authorized by Acts of Congress. This is sometimes placed upon the express wording of the Acts of Congress giving authority to bring action in state courts such as we have here, and sometimes upon the theory that where exclusive power is not given to the United States by the Constitution, the state courts retain their general jurisdiction over all matters not thus taken away.

In the case of *Claflin v. Houseman*, 93 U. S. 130, 136, 23 L. Ed. 833, an assignee in bankruptcy sued in a court of the State of New York to recover a preference, voidable under the National Bankruptcy Act, 11 U. S. C. A., Sec. 1, et seq. The Supreme Court upheld the jurisdiction of the State Court, saying: "The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, a paramount sovereignty. Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State,—concurrent as to place and persons, though distinct as to subject-matter. Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. * * * So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the State courts, competent to decide rights of a like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, as it sees fit, give

to the Federal courts exclusive jurisdiction. * * * If an act of Congress give a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court. The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts in the same country, having jurisdiction partly different and partly concurrent. The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on an erroneous view of the nature and relations of the State and the Federal governments."

In a case subsequently arising in this Court, *Ordway v. Central National Bank*, 47 Md. 217, 28 Am. Rep. 455, a suit was considered which had been brought for the recovery of double the amount of usurious interest paid. Such action was authorized by the National Banking Act (Act of Congress, 1864, Ch. 106, Sec. 30, 13 Stat. 108). This Court said that the cause of action was a forfeiture, a "penalty of a civil nature" and the remedy given by the statute was by private civil action of debt to the party grieved. The case was compared in principle to an action of debt brought by a landlord against his tenant for double value for not quitting in pursuance of notice given. There was said to be a distinction between such penalty, and a penalty prescribed as criminal punishment. The former was considered to be remedial in nature. The Court discussed the case of *Claflin v. Houseman* supra, and decided "* * * whether the right to maintain this action be placed upon the express terms of the statute giving cognizance to the State Courts, or

simply upon the non-exclusion of State jurisdiction, in either case the action is maintainable. And that the cause of action is a penalty, to be recovered in a civil action of debt by the party grieved, constitutes no objection to the State Courts taking cognizance of it, and enforcing the right."

The court then distinguished the earlier case of *First Nat. Bank v. Price,* 33 Md. 487, 3 Am. Rep. 204, where it had refused to enforce a penalty given by a statute of Pennsylvania, because courts of one state will not enforce penalties imposed by the law of another. "* * * no such reason or principle applies as to the laws of the United States, when sought to be enforced in the Courts of the several States. The Constitution and laws of the Union are the supreme law of the land, and are as much a part of the law of each State, and as binding upon its Courts and people, as its own local Constitution and laws."

In the Second Employers' Liability Cases (*Mondou v. New York, N. H. & H. R. Co.*), 223 U. S. 1, 56 L. Ed. 327, one of the three cases heard together was that brought by a citizen of Connecticut in a competent court of that State to recover for personal injuries under the Act of Congress of April 22, 1908, 35 Stat. 65, C 149, 45 U. S. C. A., Sec. 51 et seq. The right to sue arose from that act. The Connecticut court declined to take jurisdiction, because the action was contrary to the policy of the State (one of the contentions in the instant case). The Supreme Court reversed, saying: "The suggestion that the act of Congress is not in harmony with the policy of the state, and therefore that the courts of the state are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exercise of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the states, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly

in the courts of the state." The earlier case of *Claflin v. Houseman,* supra, was quoted and the Court concluded that rights arising under the act might be enforced "as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion."

What kind of statute is penal and what is remedial is discussed in the leading case of *Huntington v. Attrill,* 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123. This case went to the Supreme Court on writ of error from this court. *Attrill v. Huntington,* 70 Md. 191, 16 A. 651. It had been held here that we would not take jurisdiction of a bill to set aside stock transfers at the suit of a creditor who had recovered a judgment in New York under a statute of that state. The New York statute made the director of a corporation (which Attrill was) liable for all the debts of the corporation if he signed a false certificate with respect to its assets. It was on this basis that the judgment against him was obtained. This court held this was a penalty, and this State did not have to enforce the penal laws of New York. Judge Stone filed a dissenting opinion, concurred in by Chief Judge McSherry.

The Supreme Court reversed this court on the ground that the New York statute was not a penal law in the international sense and we had denied full faith and credit to the New York judgment. The Court agreed with the doctrine that penal laws of one sovereignty are not enforceable by the courts of another, quoting the opinion of Chief Justice Marshall in *The Antelope,* 10 Wheat. 66, 123, 6 L. Ed. 268. "The courts of no country execute the penal laws of another." It then discussed what are penal laws and said: "Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out

that neither the liability imposed nor the remedy given is strictly penal." And then, stating how the inquiry in each case was to be determined, "The question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act."

The distinction laid down in *Huntington v. Attrill* has been applied by the Supreme Court in a number of cases where the recovery of a flat sum or double pay is authorized in a civil suit. Without discussing them in detail, such cases are *Brady v. Daly*, 175 U. S. 148, 44 L. Ed. 109, *Atchison, T. & S. F. R. Co. v. Nichols*, 264 U. S. 348, 68 L. Ed. 720, and *Overnight Motor Transportation Co. v. Missel*, 316 U. S. 572, 86 L. Ed. 1682, in each of which the flat sum or double pay was held not to be a penalty.

Prior to the decision in *Huntington v. Attrill*, there was considerable difference of opinion in the courts of the country as to what was meant by penal statutes, in the sense that the term was used to denote those which one state would not enforce if passed by another. The difficulty seems to have arisen because of the varying use of the word "penal" or of the word "penalty." A statute may be penal in the broad sense and it may carry a penalty, and yet it may not be penal in the sense that it is unenforceable in other jurisdictions. In *Re-statement Conflict of Laws*, Section 611, comment b 3, the broad interpretation is indicated, but the distinction made in *Huntington v. Attrill* would seem to be persuasive authority in the interpretation of a federal statute.

It seems to be clear, moreover, on the authority of the later Supreme Court cases, that the State Courts should take jurisdiction of the enforcement of civil liabilities created by Acts of Congress, whether they are construed as penal or whether they are construed as merely remedial. That was the view taken in *Claflin v. Houseman*,

supra, as shown by the quotation from that case, set out earlier in this opinion. And Judge Alvey, speaking for this Court in *Ordway v. Central National Bank,* supra, decided in 1877, said that the reason or principle underlying the denial of enforcement by one State of penalties created by the statute of another, had no application "to the laws of the United States, when sought to be enforced in the Courts of the several States." When *Huntington v. Attrill,* supra, was decided, the doctrine was disapproved that there should be a different approach to the enforcement of statutes of the United States creating civil penalties from that used in connection with the enforcement of similar statutes of other states. The Supreme Court said in that case that the only authorities for such distinction were *Claflin v. Houseman,* supra, and *Ordway v. Central National Bank,* supra. Yet, in 1912, when the Second Employer's Liability Cases were decided, the Supreme Court went back to the earlier doctrine, and quoted with approval the statements in *Claflin v. Houseman* which had been used by Judge Alvey as a basis for the holding in *Ordway v. Central National Bank* and which had been cited with disapproval in *Huntington v. Attrill.* And there have been later cases following the decision in the *Second Employer's Liability Cases.* We must, therefore, regard this last mentioned decision as controlling authority that the remedies sought in the action before us, under Section 205(e) of the Emergency Price Control Act are enforceable in the Maryland courts.

It is proper to note that the enforcement of the Emergency Price Control Act has been before the highest courts of four other states, as well as before the Court of Appeals of the District of Columbia. In a New Jersey case, jurisdiction was allowed in a tenant case under Section 205(e) because the suit was held to be "of a civil nature, remedial of a private wrong and therefore not penal, a private suit for a private wrong." *Beasley v. Gottlieb,* 131 N. J. L. 117, 35 A. 2d 49. The Illinois, California and Connecticut courts hold that the act is en-

362

forceable in their states, whether it is held penal or remedial. *Regan v. Kroger, G. & B. Co.,* 386 Ill. 284, 54 N. E. 2d 210, 219; *Miller v. Municipal Ct.,* 22 Cal. 2d 818, 142 P. 2d 297; *Lapinski v. Copacino,* 131 Conn. 119, 38 A. 2d 592. In the District of Columbia the plaintiff was held entitled to the minimum sum provided in the act. There all of the courts were courts of the United States, so no question of jurisdiction arose. But the court there did say in respect to a claim that Congress could not have intended to penalize an inadvertent mistake. "But this reasoning overlooks the fact that the aim of Section 205 (e) is not to 'penalize.' That purpose is served by paragraph 205(b) which provides criminal penalties and is limited to willful violations." *Bowles v. American Stores,* 139 Fed. 2d 377, 379, certiorari denied; 322 U. S. 730.

For the reasons above stated the judgments will be affirmed.

*Judgments affirmed with costs to the appellees.*