567 A.2d 101

**Bert W. REIN**

v.

**KOONS FORD, INC.**

No. 55, Sept. Term, 1989.

Court of Appeals of Maryland.

Dec. 22, 1989.

Michael M. Levy (Levy & Smith, P.C., on brief), Washington, D.C., for appellant.

J. Bradford McCullough (James J. Cromwell, Deborah L. Moran, Frank, Bernstein, Conaway & Goldman, on brief), Bethesda, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

Under the Maryland law of conflict of laws Maryland courts do not enforce the "penal" laws of other states or nations. The principal question in this case is whether a Virginia consumer protection statute on which the instant transitory action is based is a "penal" statute in the conflict of laws sense. As hereinafter explained, we shall hold that the statute is not penal.

The judgment appealed from was entered on a motion to dismiss. Appellant, Bert W. Rein (Rein), filed a complaint in the Circuit Court for Montgomery County against the appellee, Koons Ford, Inc. (Koons). Rein is a resident of Montgomery County, Maryland, who, we are told, works in the District of Columbia. Koons is a Virginia corporation which conducts an automobile dealership business in Falls

Church, Virginia. Rein purchased an automobile from Koons at the Falls Church location in April 1988. The complaint alleges that, throughout the Washington, D.C., metropolitan area, Koons advertised that various models could be purchased at specified prices, plus "taxes and tags" and freight. Rein further avers that, because Koons also charged a $99.90 "document preparation" fee without disclosing that fee in its advertisement, Koons violated Virginia Code Ann. § 18.2–216 (1960, 1988 Repl.Vol.) which provides:

"Any person, firm, corporation or association who, with intent to sell or in anywise dispose of merchandise, securities, service or anything offered by such person, firm, corporation or association, directly or indirectly, to the public for sale or distribution or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates or places before the public, or causes, directly or indirectly to be made, published, disseminated, circulated or placed before the public, in a newspaper or other publications, or in the form of a book, notice, handbill, poster, blueprint, map, bill, tag, label, circular, pamphlet or letter or in any other way, an advertisement of any sort regarding merchandise, securities, service, land, lot or anything so offered to the public, which advertisement contains any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading, or uses any other method, device or practice which is fraudulent, deceptive or misleading to induce the public to enter into any obligation, shall be guilty of a Class 1 misdemeanor."

Rein sues on his own behalf and seeks also to sue on behalf of a class consisting of "all persons similarly situated in Maryland who purchased new automobiles from [Koons]

within three years of the filing of [the] Complaint." [1]   The complaint does not specify where Rein read the allegedly deceptive ad and, consequently, does not exclude Rein's having read it in Virginia.   For himself, and for each member of the proposed class, Rein seeks $100 pursuant to Virginia Code Ann. § 59.1–68.3 (1950, 1987 Repl.Vol.).   That section in relevant part reads:

> "Any person who suffers loss as the result of a violation of Article 8 (§ 18.2–214 et seq.), Chapter 6 of Title 18.2 or Chapter 2.1 (§ 59.1–21.1 et seq.) of Title 59.1 of this Code shall be entitled to bring an individual action to recover damages, or $100, whichever is greater.   ... Notwithstanding any other provision of law to the contrary, in addition to the damages recovered by the aggrieved party, such person may be awarded reasonable attorney's fees."

Koons moved to dismiss the complaint for the reasons set forth in a legal memorandum filed in support of the motion. At a hearing on that motion the circuit court expressly declined to rule concerning the grounds advanced by Koons. The court dismissed the complaint based on its conclusion that § 59.1–68.3 was a penal statute which the court could not enforce.   Rein appealed to the Court of Special Appeals, and this Court issued the writ of certiorari prior to review by the intermediate appellate court.

Appellant contends that § 59.1–68.3 of the Virginia Code is not penal.   Koons now joins issue on that point.   Additionally, Koons asserts that, even if the reason given by the circuit court was incorrect, the judgment is supported by the other reasons advanced by Koons in the trial court. Essentially these arguments are that (A) the statute requires actual damage, which has not been alleged;   (B) the statute cannot be applied extraterritorially;   and (C) the action is an improper class action so that claims of the class

---

1.   At oral argument counsel for Rein further limited "persons similarly situated" to those who purchased new automobiles from Koons at the Falls Church place of business.

members cannot be aggregated to meet the minimum monetary jurisdiction of the circuit court.

## I

"Most causes of action, whether based on statutes or on common law, are transitory, which means that actions can be maintained upon such causes of action in states other than that in which the cause of action arose."

R. Leflar, *American Conflicts Law*, at 85 (3d ed. 1977). Rein's theory of the case is that § 59.1–68.3 of the Virginia Code created a transitory cause of action on which Rein sues in Maryland. Koons does not challenge the jurisdiction of the Circuit Court for Montgomery County over its person. No issue of forum non conveniens has been raised. *Compare Johnson v. G.D. Searle & Co.*, 314 Md. 521, 552 A.2d 29 (1989) (personal injury actions by nonresidents based upon foreign products liability law erroneously dismissed on forum non conveniens grounds absent condition that defendant waive statute of limitations at more convenient forum).

In dismissing the instant action the circuit court relied on the rule that "[n]o action will be entertained on a foreign penal cause of action." Restatement (Second) of Conflict of Laws § 89 (1969). Of course, to apply the rule one must identify that which is "penal" within the meaning of the rule. This Court recognizes the rule and identifies penal statutes by the test established in *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), *rev'g*, 70 Md. 191, 16 A. 651 (1889). *See Texaco, Inc. v. Vanden Bosche*, 242 Md. 334, 219 A.2d 80 (1966); *Lambros v. Brown*, 184 Md. 350, 41 A.2d 78 (1945). In *Huntington*, this Court had refused to enforce a New York statute making liable for corporate debts those officers who had signed a false report. The Supreme Court reversed, holding that the New York statute was not penal under the following test:

"The question whether a statute of one State, which in some aspects may be called penal, is a penal law in the

international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offence against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act."

146 U.S. at 673–74, 13 S.Ct. at 230, 36 L.Ed. at 1130. Our *Lambros* decision, applying the *Huntington* test, held that the Emergency Price Control Act of 1942 was not penal even though the statute permitted the buyer who had been overcharged to bring an action for the greater of $50 or three times the excess of the consideration paid over the applicable maximum price.

*Texaco, Inc. v. Vanden Bosche, supra,* involved a Virginia statute imposing personal liability on the directors, officers and agents of a foreign corporation which transacted business in Virginia without having obtained a certificate of authority. Judge Hammond, writing for the Court, cleared certain pre-*Huntington* underbrush from Maryland law and decided that the Virginia statute was "primarily compensatory to creditors and not penal." 242 Md. at 339, 219 A.2d at 83.

The proper focus, therefore, is on whether the individual plaintiff sues to vindicate a private right. *Loucks v. Standard Oil Co. of New York*, 224 N.Y. 99, 120 N.E. 198 (1918). The fact that the statute additionally punishes the wrongdoer or helps to deter unwanted conduct does not turn the statute into a penal law. Chief Judge Cardozo, speaking for the Court of Appeals of New York in *Loucks*, stated:

> "A statute penal in [the international sense] is one that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. ...
> The purpose must be, not reparation to one aggrieved, but vindication of the public justice."

224 N.Y. at 102–03, 120 N.E. at 198.

Restatement (Second) Conflict of Laws, § 89, comment *a* puts the concept this way:

"[The penal law exception] applies only to actions brought for the purpose of punishing the defendant for a wrong done by him.... [T]he rule does not apply to actions brought by a private person or public body to recover compensation for a loss."

In the matter at hand the two Virginia statutes illustrate the distinction between penal and nonpenal laws, and Rein clearly bases his action on the nonpenal statute. Section 18.2–216 creates a statutory misdemeanor. That portion of § 18.2–216 set forth above is nearly verbatim

"a Model Statute drawn up in 1911 by Mr. Harry D. Nims at the instance of *Printer's Ink*, a magazine published for advertisers. The statute became known as the Printer's Ink Model Statute and soon received the indorsement of the various organizations interested in truthful advertising. The statute made advertisers criminally responsible for false or misleading statements or representations of fact in any type of advertising, excluding only oral statements. It did not require knowledge or intent to deceive on the advertiser's part, or reliance on his statement by, or damage to anyone. It imposed absolute responsibility on anyone guilty of the prohibited act."

Comment, *Untrue Advertising*, 36 Yale L.J. 1155, 1156–57 (1927) (footnote omitted). The Printer's Ink Model Statute was enacted in Virginia by the 1924 Acts of Assembly, ch. 409. *See* Comment, *Untrue Advertising*, *supra*, at 1157 n. 11.[2]

Section 59.1–68.3 incorporates § 18.2–216 by reference and entitles "[a]ny person who suffers loss as the result of a violation of" the incorporated section "to bring an individual action to recover damages, or $100, whichever is greater." The statute was first enacted by 1973 Virginia Acts of Assembly, ch. 537. The later enactment seems clearly

---

2. The Printer's Ink Model Statute is also discussed in Note, *The Regulation of Advertising*, 56 Colum.L.Rev. 1018, 1058 *et seq.* (1956); Handler, *False and Misleading Advertising*, 39 Yale L.J. 22, 31 (1929); 1A R. Callmann, *Unfair Competition, Trademarks and Monopolies* § 5.02, at 17 (4th ed. 1981 rev.).

intended to provide a private civil remedy as an alternative to criminal prosecution for the same conduct proscribed by § 18.2–216. The monetary recovery is awarded to the person who suffered the loss as a result of the violation, and not to the Commonwealth of Virginia or to any of its political subdivisions. Section 59.1–68.3 is not a penal statute in the conflict of laws sense.

Koons contends that the later statute is penal because enforcement of the civil remedy is contingent on a violation of the earlier enacted criminal statute. But the criminal statute is "penal" only if it is directly enforced by the state. It is not "penal" when used, through incorporation by reference, to provide elements of a cause of action for damages.

*Mexican Nat'l R. Co. v. Slater*, 115 F. 593 (5th Cir.1902), *aff'd*, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904), illustrates that a statute may be remedial even though the acts which give rise to civil liability also constitute a criminal offense. In that case the plaintiffs were the surviving wife and children of a party killed in Mexico by the negligence of the defendant. The law of Mexico created a class of crimes termed "negligent crimes." In addition, commission of the crimes gave rise to civil liability. In a suit brought in Texas based on Mexican law the defendant demurred, asserting that the remedy was based upon a penal statute. The court separated the civil remedy from the criminal liability provided by the Mexican law and held that the law was not penal in the international sense. It created a civil action to recover damages for a civil injury. *Id.* at 603.

*Osborn v. Borchetta*, 129 A.2d 238 (Conn.Super.Ct.1956), is also analogous to the case at bar. That case involved a wrongful death action in Connecticut based on a New York dramshop act. Section 65 of the New York Alcoholic Beverage Control Law, McK.Consol.Laws, C. 3–B, made it a crime to sell intoxicating beverages to an intoxicated person. *Id.* at 239. Section 16 of New York's Civil Rights Law, McK.Consol.Laws, C. 6, gave a

cause of action to any person injured by an intoxicated person against any person "who shall, *by unlawfully selling liquor* to such intoxicated person, have caused or contributed to the intoxication." *Id.* (emphasis added). The Superior Court of Connecticut found that the civil action in Connecticut was not barred by the penal law exception. The court distinguished between statutes imposing punishment for an offense against the state and those giving a private action against the wrongdoer. *See id.* at 240. The dramshop act had important remedial features and any damages recovered did not inure to the state. *Id.*

*Becker v. Computer Sciences Corp.*, 541 F.Supp. 694 (S.D.Tex.1982), involved the California Invasion of Privacy Act which makes unauthorized recording of confidential communications a crime. *Id.* at 699–700. The act also provides a civil remedy for "[a]ny person who has been injured by a violation of [the act]." *Id.* at 700. A counterclaim based on the statute was allowed to proceed. The court recognized that the civil remedy was in some aspects penal because it was part of a comprehensive act designed to deter wrongful conduct. *Id.* at 702. Nevertheless, the civil section of the act was more remedial than penal and would be enforceable in Texas. And *see Porter v. Household Fin. Corp.*, 385 F.Supp. 336 (S.D.Ohio 1974); *Farmers & Merchants Trust Co. v. Madeira*, 261 Cal.App.2d 503, 68 Cal.Rptr. 184 (1968); *State v. Pitner*, 42 N.J. 251, 200 A.2d 104 (1964). *Compare Insurance Research Serv., Inc. v. Associates Fin. Corp.*, 134 F.Supp. 54 (M.D.Tenn.1955) (refusing to imply private cause of action in Missouri criminal libel statute which did not require publication).

Koons also cites *Henry v. R.K. Chevrolet, Inc.*, 219 Va. 1011, 254 S.E.2d 66 (1979), in support of its argument that the two "integrally linked" Virginia statutes are penal. In *Henry* the Supreme Court of Virginia faced the question whether the statutes applied where the alleged deceptive statement of fact was made orally. Holding that the statutes did not apply under those circumstances, the court

stated that "[t]his is a penal statute and must be construed strictly." *Id.* at 1104, 254 S.E.2d at 68.

*Henry* uses the term "penal" in the context of a well recognized rule of statutory construction. That rule of construction continues to apply to an underlying criminal statute when it forms the basis for a civil remedy. For example, in *Smith v. Higinbothom,* 187 Md. 115, 130–31, 48 A.2d 754, 762 (1946), dealing with a statute regulating election practices, we said that "[t]here is no impropriety in putting a liberal construction on a remedial clause, and a literal construction on a penal clause in the same statute." Simply because the Virginia criminal statute receives a strict construction when incorporated in the statute providing for a civil remedy, the latter does not become a law penal in the international sense.

Further, even if we assume that *Henry* means that, as a matter of the Virginia law of conflict of laws, a statute identical to § 59.1–68.3, enacted by a state other than Virginia, would be classified as penal in Virginia, that conclusion would not control our decision. Whether a statute is penal in the conflict of laws sense is decided by the law of the forum. *See Huntington v. Attrill,* 146 U.S. at 683, 13 S.Ct. at 233, 36 L.Ed. at 1133; *Miller v. Municipal Court of City of Los Angeles,* 22 Cal.2d 818, 837, 142 P.2d 297, 308 (1943); *Southern Package Corp. v. Walton,* 196 Miss. 786, 801, 18 So.2d 458, 461, *cert. denied,* 323 U.S. 762, 65 S.Ct. 93, 89 L.Ed. 609 (1944); *Robinson v. Norato,* 71 R.I. 256, 264, 43 A.2d 467, 471 (1945); *Paper Prods. Co. v. Doggrell,* 195 Tenn. 581, 586, 261 S.W.2d 127, 129 (1953); *Hinton v. Bond Discount Co.,* 214 Ark. 718, 724, 218 S.W.2d 75, 78 (1949); 36 Am.Jur.2d, *Forfeitures & Penalties* § 12.

Thus the Supreme Court in *Huntington* stated:

"The test is not by what name the statute is called by the Legislature or the courts of the state in which it was passed, but whether it appears to the tribunal which is called upon to enforce it to be, in its essential character

and effect, a punishment of an offense against the public, or a grant of a civil right to a private person."

146 U.S. at 683, 13 S.Ct. at 233, 36 L.Ed. at 1133. The classification of a statute as penal by a court of the enacting state, for the purpose of applying a rule of statutory construction of the internal law of that state "does not make the characterization binding upon [the forum state] if, in fact and substance, the statute is not a penal law." *Terenzio v. Nelson,* 107 N.J.Super. 223, 227, 258 A.2d 20, 23 (1969).

For these reasons Rein's action is not founded on a penal statute.

## II

Relying on the principle that a judgment may be affirmed for any supporting reason plainly appearing upon the record, Koons has submitted to us the reasons which it advanced in the circuit court for dismissal of the complaint. We now consider those grounds for affirmance.

## A

Section 59.1–68.3 limits the plaintiff in the civil action therein provided to "[a]ny person who suffers loss as the result of a violation[.]" Rein's complaint concludes by averring that he and the proposed class members have been directly injured by the alleged deceptive advertising. Koons submits that the general allegation is insufficient to satisfy the statutory requirement of "loss."

Koons's argument raises a point of Maryland pleading. As a general rule in Maryland damages which necessarily result from the wrong complained of may be shown under a general allegation, and, ordinarily, only special damages need be more particularly set forth. *See McTavish v. Carroll,* 13 Md. 429 (1859); *Ellicott v. Lamborne,* 2 Md. 131 (1852). We find nothing in § 59.1–68.3 indicating that special damage is required for a person to suffer a "loss."

Indeed, the statute plainly indicates that proof of a specific amount of actual or compensatory damages is not required. The "person who suffers loss" is entitled to "recover damages, or $100, whichever is greater." There is no requirement that the plaintiff demonstrate the monetary amount of the alleged loss suffered in order to be entitled to the minimum recovery.

This construction of the Virginia statute is consistent with the construction of similar consumer protection statutes in other states. For example, the Connecticut Unfair Trade Practices Act (CUTPA) permits a private action to be brought by any "person who suffers any ascertainable loss of money or property, real or personal as a result of the" prohibited practice. Conn.Gen.Stat. § 42–110g(a) (1958, 1987 Repl.Vol.). That provision was interpreted in *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 440 A.2d 810 (1981), where the plaintiff had purchased a vehicle advertised as having " 'full-time four-wheel drive' " which actually employed "a system for transmitting power to the wheels using a limited slip differential mechanism." *Id.* at 611, 440 A.2d at 813. The court held that "the words 'any ascertainable loss' ... do not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case." *Id.* at 612–13, 440 A.2d at 813–14. The court explained:

"[T]he inclusion of the word 'ascertainable' to modify the word 'loss' indicates that plaintiffs are not required to prove actual damages of a specific dollar amount. 'Ascertainable' means 'capable of being discovered, observed or established.' ...

" 'Loss' has been held synonymous with deprivation, detriment and injury. ... It is a generic and relative term. ... 'Damage,' on the other hand, is only a species of loss. ... The term 'loss' necessarily encompasses a broader meaning than the term 'damage.' ...

"Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is

measurable even though the precise amount of the loss is not known. CUTPA is not designed to afford a remedy for trifles. In one sense the buyer has lost the purchase price of the item because he parted with his money reasonably expecting to receive a particular item or service. When the product fails to measure up, the consumer has been injured; he has suffered a loss. In another sense he has lost the benefits of the product which he was led to believe he had purchased. That the loss does not consist of a diminution in value is immaterial, although obviously such diminution would satisfy the statute. To the consumer who wishes to purchase an energy saving subcompact, for example, it is no answer to say that he should be satisfied with a more valuable gas guzzler.

. . . .

"Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss. ... To satisfy the 'ascertainable loss' requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained. This approach is in keeping with the remedial aims of the statute and will ensure that the private civil action established by the statute will remain a meaningful avenue of redress for consumers who have been the victims of unfair or deceptive trade practices."

*Id.* at 613–15, 440 A.2d at 814–15 (citations and footnotes omitted).

A New York statute providing for consumer protection from deceptive acts and practices permits a private action for a minimum $50 recovery by "[a]ny person who has been injured by reason of any violation of" the statute. New York Gen.Bus.Law Art. 22–A, § 350–d(3) (McKinney 1988). In *Beslity v. Manhattan Honda,* 120 Misc.2d 848, 467 N.Y.S.2d 471 (N.Y.Sup.Ct.1983), the plaintiff responded to an ad advertising a $1,000 discount on a specific model but was able to obtain only a $750 discount. The plaintiff

purchased the car. The court held that "[i]nasmuch as the plaintiff traveled to defendant's showroom on the basis of a misleading and deceptive ad, plaintiff suffered injury and is entitled to recover damages." *Id.* at 854, 467 N.Y.S.2d at 475. Because plaintiff's "actual damage cannot be said to include the amount of a discount he was told was not available at the time he made the purchase," the plaintiff was allowed only the $50 minimum damages. *Id.*

Interpreting the same New York statute, the court in *Geismar v. Abraham & Straus,* 109 Misc.2d 495, 439 N.Y.S.2d 1005 (Dist.Ct.1981), held that a plaintiff need not prove actual damages but is a "person who has been injured" within the meaning of the statute if that person has been mislead or deceived by an advertisement. *Id.* at 499, 439 N.Y.S.2d at 1008. In that case the plaintiff attempted to purchase goods at the advertised price but the defendant refused to sell at that price.

The Massachusetts Consumer Protection Act was construed in *Leardi v. Brown,* 394 Mass. 151, 474 N.E.2d 1094 (1985), a case involving residential leases containing prohibited provisions. The Massachusetts Act permitted a private action by one "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful...." *Id.* at 157 n. 8, 474 N.E.2d at 1100 n. 8. The statute provided for a minimum $25 recovery. The court interpreted "injured" to denote the invasion of any legally protected interest and held that "where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded, ... the statute provides for the recovery of minimum damages...." *Id.* at 160, 474 N.E.2d at 1101.

*Homsi v. C.H. Babb Co.,* 10 Mass.App. 474, 409 N.E.2d 219 (1980), interpreted the injury requirement of the same statute to be satisfied by "some transportation expenses and lost interest income on [plaintiff's] funds by relying on the defendant's deceptive promise and continuing to proceed under the contract." *Id.* at 480, 409 N.E.2d at 225.

Further, the purpose of a restriction on those who can invoke the private remedy provisions of a consumer protection statute is explained in 1 H. Alperin & R. Chase, *Consumer Law—Sales Practices and Credit Regulation* § 136, at 193 (1986). The authors state:

"Many of the state consumer protection acts permit a consumer to bring a private action against a businessman who has acted unfairly or deceptively only if the consumer has been injured or damaged by the businessman's conduct. This restriction is said to prevent aggressive consumers who were not personally harmed by the prohibited conduct, or even involved in a transaction with the offending businessman, from instituting suit 'as self-constituted private attorneys general' over relatively minor statutory violations. Another fear is that the powerful weapon given to consumers in the form of the private remedy 'was capable of being used improperly for harassment and improper coercive tactics.' "

(Footnotes omitted).

■ The loss requirement's purpose is satisfied under Rein's theory of the deception, a theory which the Koons motion does not challenge. As Rein interprets the statute, the deceptive advertising consisted in stating a specific cash price in one or more advertisements which drew Rein, and possibly other Maryland residents, to the Falls Church showroom. In the contract formed there, Koons included the document preparation charge in that section of the written contract dealing with taxes and tags. It is Rein's position that the document preparation fee, in relation to the advertisement, is an increase in the cash price. By going to Falls Church in response to the ads and there purchasing automobiles under contracts which included the document preparation charge, Rein and others have suffered harm which the statute, under Rein's interpretation, is intended to prevent. To the extent that the "loss" provision in the statute requires a monetary detriment, that requirement is satisfied by the unquantified expense of traveling to Falls Church in response to the allegedly deceptive ad. *See*

*Beslity v. Manhattan Honda, supra; Homsi v. C.H. Babb
Co., supra.*

### B

Koons also argues that enforcing the remedy provided by
§ 59.1–68.3 would be an extraterritorial application of a
Virginia criminal statute. The argument has multiple
steps. First, Koons says, there must be a violation of the
underlying criminal statute. Next, Koons submits that the
acts made criminal by § 18.2–216 are publishing, dissemi-
nating, circulating or placing before the public the deceptive
advertising. In order for those acts to be punished crimi-
nally in Virginia, Koons argues that those acts must be
committed in Virginia. Turning to the complaint, Koons
reads it to say that "the alleged conduct occurred outside of
Virginia and thus beyond the reach of Virginia criminal
jurisdiction...." Appellee's Brief at 15.

Rein's complaint in fact alleges:

"These advertisements were intended to and did reach
audiences in the Washington metropolitan area including
Montgomery County, Maryland. Attached hereto as Ex-
hibit A are copies of such advertisements appearing in the
Washington Post and Montgomery Journal."

The short answer to Koons's contention is that the Wash-
ington Post circulates in Virginia, a fact of which we take
judicial notice. *See Wilhelm v. State*, 272 Md. 404, 439, 326
A.2d 707, 728 (1974) (judicial notice includes common knowl-
edge which every informed individual possesses).[3]

### C

■ The third string to Koons's bow of alternative
grounds for supporting the judgment is that the action can
involve only Rein's claim for the minimum recovery of $100.

---

**3.** Our "short" answer does not imply that a state lacks power to
impose, for deceptive advertising circulated exclusively outside the
legislating state, criminal or civil liability on an advertiser who is a
resident of the legislating state where the transaction solicited by the
advertising actually takes place.

If that is so, the action does not meet the minimum $2,500 amount in controversy for circuit court jurisdiction under Md.Code (1974, 1989 Repl.Vol.), § 4–402(d) of the Courts and Judicial Proceedings Article. The argument rests on that portion of Virginia § 59.1–68.3 which permits the person who suffers loss "to bring an individual action. . . ." Koons says that use of the word "individual" prohibits class actions.

We are inclined to think, as a matter of Virginia law, that "individual" connotes a private action, in contrast to a civil enforcement proceeding brought by the Attorney General of Virginia. We need not, however, construe the Virginia statute because it does not govern the issue. The law of the forum governs procedural matters. *Billingsley v. Lincoln Nat'l Bank*, 271 Md. 683, 685 n. 1, 320 A.2d 34, 35 n. 1 (1974); *Vernon v. Aubinoe*, 259 Md. 159, 162, 269 A.2d 620, 621 (1970). Whether this action may be certified as, and proceed as, a class action is a procedural question to be decided by the law of this state. Maryland will permit a class action in appropriate cases. *See* Md.Rule 2–231. Section 4–402(d)(1)(ii) of the Courts and Judicial Proceedings Article permits the separate claims of proposed members of the class to be aggregated to meet the minimum amount in controversy for circuit court jurisdiction. Consequently, it cannot be determined from the face of the complaint that there is no monetary jurisdiction.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.