**LOCKWOOD CORPORATION,**
Plaintiff-Appellee,

v.

**Clifford BLACK and Bill Jim St. Clair,
d/b/a B & S Irrigation,
Defendants-Appellants.**

No. 80–2363.

United States Court of Appeals,
Fifth Circuit.

March 5, 1982.

Young & Green, Gordon H. Green, Muleshoe, Tex., for defendants-appellants.

George H. McCleskey, Don Graf, Lubbock, Tex., for plaintiff-appellee.

Before GEE, GARZA and REAVLEY, Circuit Judges.

GARZA, Circuit Judge:

Before us is a classic example of a simple contract case unnecessarily transformed into a monster. Appellee Lockwood Corporation ("Lockwood"), a Delaware corporation with its principal place of business in Nebraska, is a seller of irrigation sprinkler systems. Appellants Clifford Black and Bill Jim St. Clair, both Texas residents, have been customers of Lockwood's since 1971. This suit was originally brought by Lockwood in an attempt to recover money due it from both Black and St. Clair.

Black and St. Clair, d/b/a a partnership under the name of B & S Irrigation ("B & S"), purchased various items of irrigation equipment from Lockwood pursuant to a

written sales agreement dated September 28, 1971.[1] The sales of equipment and parts were usually credit sales and were charged to two accounts maintained by Lockwood for B & S.[2] Beginning in January, 1974, Lockwood began charging interest on each of the accounts if not paid when due. If, however, B & S paid the invoice on or before the due date, it received a discount.

On May 29, 1974, Black and St. Clair came to Gehring, Nebraska, to discuss the status of their account with Lockwood. At the end of that discussion, St. Clair asked to be relieved of any further responsibility under the sales agreement. The vice-president of marketing for Lockwood complied with this request and notified appellants of the termination of the contract effective May 29, 1974. Subsequently, appellant Black maintained business as B & S Irrigation in an individual capacity, and although no written contract was consummated, Black continued to purchase irrigation systems and parts from Lockwood as he had in the past.

Throughout the period of time from 1971 until January 1, 1975, Lockwood charged B & S 8% per annum on its past due accounts. On January 1, 1975, that rate was increased to 12%. B & S consistently paid the interest charges without objection throughout the years the parties did business together. Unfortunately, trouble arose in mid-1975 when B & S failed to pay Lockwood the balance owed on its account. Lockwood proceeded to file suit in state court to recover the sum of $6,613.90.[3]

The entire complexion of the suit began to change drastically when B & S, Black and St. Clair filed their first counterclaim in February, 1977. There it was alleged for the first time that the interest being charged was usurious. On October 24, 1974, twenty-two months after the initial suit was filed, B & S filed an amended pleading which sought to recover more than $1,000,-000 for alleged usury violations and some $200,000 (to be trebled) for alleged violations of the Texas anti-trust statutes. At this point Lockwood moved that the case be removed to federal court. No motion to remand or other objection to removal was filed by defendants, and the case remained in federal court.

As the case was eventually presented to the district court, the basic controversies between the parties were whether Nebraska law should apply and whether an agreement existed for B & S to pay interest after May 29, 1974. Both issues were resolved against B & S by the trial court and judgment was entered in favor of Lockwood against Black for the amount owed, less $522.87 in usurious interest. No recovery was granted against St. Clair because it was agreed at trial that he had severed his relationship with B & S prior to the accumulation of liability.

On this appeal appellants allege that the district court, 501 F.Supp. 261, erred in five respects. First, that it erred in ruling that Nebraska state law applied. If this should be found to be true, appellants then argue

1. The agreement was negotiated and executed by all parties in Gehring, Nebraska, the home of Lockwood.
   Two provisions contained within that agreement are quite pertinent to the current controversy:
   12. ...
   ....
   Dealer agrees to pay interest on all past due notes and accounts at the highest contract rate not exceeding eight per cent per annum.
   ....
   28. This contract shall be deemed by the parties to have been executed in the State of Nebraska, and in the event of breach of any of the covenants contained herein, regardless of the situs of the property involved or the place of breach, this contract will be interpreted and enforced in accordance with the laws of Nebraska.

2. One account was called the Machine Dating Account; this was the account to which complete irrigation systems were charged. The second account was called the Regular Account, and all parts sold by Lockwood to B & S were charged here.

3. Although the initial reaction of B & S was to file a sworn denial that it owed this amount, by the time the case was tried in federal court, B & S stipulated that the amount it owed Lockwood was the amount originally sued for in state court.

that the court erred: (1) in finding a valid contract; (2) in holding that the parties had an agreement to pay interest after May 29, 1974; (3) in ruling that all orders placed prior to May 29, 1974, but delivered thereafter, were still subject to the written agreement of 1971 and that interest would be proper unless the rate exceeded the maximum allowed; and (4) in ruling that cash discounts were not interest. Before reaching these contentions, however, there remains the question of jurisdiction.

Two jurisdictional defects are immediately observable. First, it was plaintiff, not the defendants, who removed the present case to federal court.[4] Second, the amount in controversy in this diversity suit is less than $10,000.[5] While normally either of these defects would preclude federal review, the unique circumstances of this case compels us to reach the merits. The Supreme Court's decision of *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), is the vehicle that takes us there.

■ As noted earlier, no motion to remand or other objection to removal was filed by any party; the case proceeded to be heard on the merits. The law established by the *Grubbs* decision is dispositive of the improper removal issue:

> We have concluded that, whether or not the case was properly removed, the District Court did have jurisdiction of the parties at the time it entered judgment. Under such circumstances the validity of the removal procedure followed may not be raised for the first time on appeal . . .
>
> . . . .
>
> Longstanding decisions of this Court make clear, however, that where after

removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

*Id.* at 700, 702, 92 S.Ct. at 1346, 1347.

The only remaining issue, then, is whether or not the district court would have had jurisdiction over the action had the defendants removed. Again, *Grubbs* answers that question affirmatively by favorably discussing the case of *Mackay v. Uinta Development Co.*, 229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913):

> *Mackay v. Uinta Development Co.*, 229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913), dealt with an action that had been commenced in the Wyoming state court between two citizens of different States. Plaintiff's claim was for less than the jurisdictional amount, but defendant's counterclaim exceeded the jurisdictional amount. The case was removed to federal court without objection by either party, and there tried on the merits. When the losing party later sought to upset a judgment against him on the merits because of failure to comply with the removal statutes, this Court [R]ejected the claim, saying: "regardless of the manner in which the case was brought or how the attendance of the parties in the United States Court was secured, there was presented to the Circuit Court a controversy between citizens of different States in which the amount claimed by one nonresident was more than $2,000, exclusive of interest and costs. As the court had

---

4. 28 U.S.C. § 1441, the general removal statute, provides that

    (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

5. 28 U.S.C. § 1332 states that

    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
    (1) citizens of different States;
    (2) citizens of a State, and foreign states or citizens or subjects thereof; and
    (3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

jurisdiction of the subject-matter the parties could have been realigned by making Mackay plaintiff and the Development Company defendant, if that had been found proper. But if there was any irregularity in docketing the case or in the order of the pleadings such an irregularity was waivable and neither it nor the method of getting the parties before the court operated to deprive it of the power to determine the cause." Id., 229 U.S. at 176–177, 33 S.Ct. at 639, 57 L.Ed. at 1139. *Id.* at 703, 92 S.Ct. at 1347.

■■ Applying this doctrine to the current case, it would appear that review is proper. Finding a basis for jurisdiction, however, does not aid appellants' appeal for this court also finds that the district court was correct in ruling that Nebraska state law applies. As all parties concerned readily admit, reversal on this ground is a necessary prerequisite to our reaching appellants' other alleged grounds of error. Without it, they become moot.

The clear command of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is that federal courts must apply the substantive law of the forum state in diversity of citizenship actions. The *Erie* doctrine requires, therefore, that a federal court apply the choice-of-law rules of the jurisdiction in which it sits. *Klaxon v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *New York Life Insurance Co. v. Baum*, 617 F.2d 1201, 1204 (5th Cir. 1980). Under Texas conflicts law, in the absence of a contrary manifestation, an initial presumption is that the parties intend for the law of the jurisdiction where the contract is made to govern. *Dailey v. Transitron Electronic Corp.*, 475 F.2d 12 (5th Cir. 1973); *Diaz v. Southeastern Drilling Company of Argentina*, 324 F.Supp. 1 (N.D.Tex.1969), aff'd, 449 F.2d 258 (5th Cir. 1971); *Austin Building Co. v. National Union Fire Insurance Co.*, 432 S.W.2d 697 (Tex.1968).

■ In applying the foregoing rules to the facts of this case, the district court determined that Nebraska law should apply. Appellants seek to avoid this finding by claiming that Lockwood lost the right to proceed under Nebraska law because certain pleadings of Lockwood's made use of a Texas evidentiary rule,[6] and because Lockwood sought to recover both attorneys' fees[7] and interest[8] under Texas law.[9] They assert that the doctrines of waiver, judicial estoppel and election support this contention.[10] We disagree.

■ First, we note that reliance upon the procedural rules of the forum state, such as Tex.R.Civ.P. 185, does not preclude a party from further relying upon the substantive law of another state when found applicable through conflict-of-law analysis.

Second, the district court already ruled on these issues. In a pretrial order, it held that "there [had] been no waiver, estoppel, or election of rights on the part of [Lockwood] that would require the court to apply Texas law to the dispute in question rather than the law of the State of Nebraska."[11] Since these determinations are primarily factual in nature, they will be reversed only if they are clearly erroneous. Fed.R.Civ.P. 52(a). After reviewing the record, we find that they were not.

AFFIRMED.

**6.** Tex.R.Civ.P. 185. This is an evidentiary rule which requires a defendant to file a sworn denial of facts or be barred from disproving plaintiff's allegations.

**7.** Tex.Rev.Civ.Stat.Ann. art. 2226.

**8.** Tex.Rev.Civ.Stat.Ann. art. 5069–1.05.

**9.** Neither of which were recovered; judgment was based solely upon Nebraska law.

**10.** Appellants also argue that the contractual provisions of the 1971 contract regarding the application of Nebraska law are limited to is-

sues involving interpretation and enforcement of that contract, and are inapplicable to the separate issue of usury. While we believe this argument to be without merit, it is unnecessary to even reach it in light of the district court's finding that the written contract was cancelled on May 29, 1974. Nebraska law was found to be applicable, not because of the express contractual provisions, but, rather, through traditional conflict-of-law analysis.

**11.** Record, vol. 3, at 360.