Bryan C. **BECKER**, Plaintiff,

v.

**COMPUTER SCIENCES CORP.,**
Defendant.

**Civ. A. No. H–80–1676.**

United States District Court,
S. D. Texas,
Houston Division.

June 22, 1982.

---

Robert L. Pendergraft, Pendergraft & Associates, Houston, Tex., for plaintiff.

Donald J. Horton, Andrews & Kurth, Houston, Tex., for defendant.

## ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court is defendant's motion for leave to file amended answer and counterclaim. Through its motion, defendant seeks to inject into this lawsuit a counterclaim predicated upon a California statute which provides a cause of action for the unauthorized eavesdropping on confidential communications by an electronic amplifying or recording device. Not surprisingly, plaintiff is opposed to defendant's motion.

On April 12, 1982 the Court held a conference in chambers with counsel for both parties in attendance. Following the presentation of the arguments of counsel, the Court took defendant's motion under advisement. After careful and judicious consideration of the arguments of counsel and their briefs in light of the relevant law, the Court hereby denies defendant's motion for the reasons set forth herein.

## I. Introduction

A brief recapitulation of the factual background of this litigation may be helpful in placing the issues under consideration in their proper context. On approximately May 16, 1979, plaintiff was hired by defendant for the position of Account Manager in the Houston office of defendant's Information Network Division. In his position as Account Manager, plaintiff was responsible for soliciting and selling the services and products of defendant to a designated clientele. In exchange for such services, plaintiff received compensation, the amount of such compensation was allegedly governed in part by an incentive compensation plan. Apparently, plaintiff performed such services in the Greater Houston Metropolitan area.

In January, 1980, plaintiff was discharged from his employment by defendant. Plaintiff, obviously of the belief that his termination was wrongful, filed the instant lawsuit against defendant on July 28, 1980, alleging basically that defendant breached a contract of employment with plaintiff.

Shortly after the commencement of this cause, the parties engaged in discovery. During plaintiff's oral deposition which was begun on December 1, 1980, defendant's counsel discovered the existence of numerous tape recordings plaintiff had made surreptitiously of telephone conversations between plaintiff and defendant's employees. At the time these conversations were recorded, plaintiff was located in Texas while defendant's employees were in California.

On November 30, 1981, defendant filed the motion for leave to amend now before the Court.

## II. Amendment

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to file amended pleadings "shall be given when justice so requires." "Determining when justice requires permission to amend rests within the sound discretion of the trial court." *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1024 (5th Cir. 1981). *See also*

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Paschal v. Florida Public Employees Relations Comm'n,* 666 F.2d 1381, 1384 (5th Cir. 1982) (per curiam); *National Distillers and Chem. Corp. v. Brad's Mach. Prods., Inc.,* 666 F.2d 492, 495 (11th Cir. 1982). Generally, absent undue delay, bad faith, failure to cure deficiencies in amendments previously allowed, futility of amendment or, most importantly, undue prejudice to the party opposing the amendment, leave to amend should be granted. *Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230; *Lewis v. Curtis,* 671 F.2d 779, 783 (3rd Cir. 1982); *Paschal v. Florida Public Employees Relations Comm'n, supra* at 1384; *National Distillers and Chem. Corp. v. Brad's Mach. Prods., Inc., supra,* at 495; *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597–98 (5th Cir. 1981); *Daves v. Payless Cashways, Inc., supra,* at 1024. *See generally* 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1981), 6 C. Wright & A. Miller, Federal Practice and Procedure § 1487 (1971).

### A. Undue Delay

In opposition to defendant's motion, plaintiff asserts first that defendant has unduly delayed in the filing of its motion. Plaintiff contends that defendant was aware of the existence of the tapes almost one year prior to the filing of defendant's motion for leave to amend. Plaintiff contends also that to allow such amendment at this time would delay the commencement of the trial of this cause and increase the time it will take to try this case. This case is presently set for trial on the Court's May/June docket.

Contrary to the unyielding position taken by plaintiff, defendant contends that although its counsel was given copies of the tapes of the telephonic conversations recorded by plaintiff at plaintiff's oral deposition in December, 1980, it did not unduly delay in filing the instant motion. Defendant alleges that as the tapes it obtained from plaintiff were of poor quality, were difficult to duplicate, transcribe, and were very lengthy, it took until November, 1981

to complete the task of transcribing the tapes. Accordingly, defendant contends that it was not until the tapes of these conversations were transcribed that it had sufficient facts upon which to base its counterclaim. In addition, defendant attributes the delay in filing its motion for leave to amend to the time its counsel spent in researching the legal issues raised by the proposed amendment. More importantly, defendant asserts finally that plaintiff has not been prejudiced as a result of the undue delay, if any, in the filing of the motion for leave to amend.

It has been often said that mere delay is not a reason in and of itself to deny leave to amend. There must be some prejudice which would result if leave were granted. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971); *Hurn v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California*, 648 F.2d 1252, 1254–55 (9th Cir. 1981); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.) *cert. dismissed*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980); *Hayes v. New England Millwork Distrib., Inc.*, 602 F.2d 15, 19 (1st Cir. 1979); *Cornell & Co. v. Occupational Safety and Health Review Comm'n*, 573 F.2d 820 (3rd Cir. 1978); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973); *International Bank v. Price Waterhouse & Co.*, 85 F.R.D. 140, 142 (S.D.N.Y.1980). *See also Dussouy v. Gulf Coast Inv. Corp., supra*, at 598.

■ After reviewing the facts of the instant cause, the Court concludes that defendant's delay in filing its motion for leave to amend, aside from the Court's failure to detect any prejudice to plaintiff, is not unduly lengthy. The defendant's desire to add a counterclaim was not raised at the eleventh hour but was filed within one year after the discovery of the tapes and five months before the trial setting of this cause. Although the Court finds that the delay in filing the motion cannot be attributed in toto to the difficulty defendant had in transcribing the tapes and in researching the underlying law which the Court concludes is indeed novel, the unaccounted for delay is simply insufficient to support a finding that such delay precludes amendment.

### B. Prejudice

"The trial court's discretion under Rule 15 . . . must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is 'the touchstone for the denial of leave to amend.'" *Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3rd Cir. 1981) (citations omitted), *cert. denied*, — U.S. —, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). *See also Zenith Radio Corp. v. Hazeltine Research, Inc., supra*, 401 U.S. at 330–31, 91 S.Ct. at 802. *See generally* 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1948); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1487 (1971).

Plaintiff argues that allowance of the amendment will cause him prejudice. Specifically, plaintiff avows that because of the time his attorneys have spent in researching the complex issues raised by defendant's motion, it has been more difficult to prepare this case for trial. Although it is not clearly stated, apparently plaintiff complains also that the amendment will complicate the trial of this case.

Although the Court admittedly does not possess the same degree of familiarity with this case as enjoyed by counsel, the Court has reviewed the issues which will be injected into this suit by reason of the amendment and can find no merit to plaintiff's claim of prejudice on the grounds heretofore stated. The Court does not believe that the counterclaim will complicate the trial of this case to a degree which would support the preclusion of the amendment. Nor does the fact that plaintiff's counsel has had to expend time in researching the issues raised by defendant's motion justification for denial of defendant's motion under the circumstances of the instant cause. If such were the case, a party could prevent his opponent from amending his pleadings

by always raising the argument being raised by plaintiff here.

■ In further support of his claim that he will be prejudiced by the amendment, plaintiff contends also that the jury might be contaminated if defendant was allowed to argue that plaintiff allegedly may have violated the criminal laws of the State of California. As pointed out by defendant, however, plaintiff can protect himself from such an argument through a motion in limine. Accordingly, the Court finds no merit to plaintiff's argument.

■ Finally, plaintiff argues in his briefs that another type of prejudice will result if the amendment is permitted, prejudice to the trial of this case. Once again, plaintiff asserts that the issue of whether plaintiff may have violated a penal law of the State of California is highly prejudicial and inflammatory, and would constitute reversible error. In addition, plaintiff argues that there is further danger of creating reversible error as the California statute upon which defendant's counterclaim is based would preclude the admission of the tape recordings, while, in plaintiff's opinion, such tapes would be admissible under the laws of the State of Texas and the Federal Rules of Evidence.

Without commenting on the accuracy of plaintiff's prediction regarding what is and what is not reversible error, the Court is unable to find merit in plaintiff's line of reasoning. Plaintiff has lost sight of the fact that the instant case is a civil, rather than a criminal case. The Court is unable at this time to see the relevancy in the fact that plaintiff may have violated a criminal law in another state by engaging in conduct which is the basis for defendant's proposed counterclaim. Once again, plaintiff also has in his procedural arsenal a motion in limine to prevent the introduction of the fact that his actions may have violated a criminal statute in another state.

Turning to plaintiff's assertion regarding the admissibility of the tapes under California or Texas law or the Federal Rules of Evidence, the Court agrees with defendant that this issue is premature at this time and should not be the basis for a denial of defendant's motion.

## C. Futility of Amendment

Plaintiff's final basis for opposing defendant's motion for leave to amend is that such amendment would be futile. In support of this claim, plaintiff asserts that as the relevant California statute is penal in nature and contrary to public policy, a Texas court would not enforce defendant's claim. In addition, plaintiff contends that applying Texas choice-of-law rules, Texas rather than California law should be applied in the instant cause. Accordingly, as Texas law does not recognize the theory of recovery contained in defendant's proposed counterclaim, it would be futile for the Court to permit the amendment. If the Court is of the opinion that the arguments set forth above are sustainable and thus amendment would be futile, a sound basis exists for denying defendant's motion. *Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230; *Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir. 1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Neighborhood Development Corp. v. Advisory Council on Historic Preservation, Department of Housing and Urban Development, City of Louisville,* 632 F.2d 21, 23 (6th Cir. 1980); *DeLoach v. Woodley,* 405 F.2d 496, 496–97 (5th Cir. 1969) (per curiam) ("The liberal amendment rules of F.R.Civ.P. 15(a) do not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.").

Defendant's counterclaim is premised on The Invasion of Privacy Act, Cal.Penal Code §§ 632 and 637.2 (West.1967). Section 632 provides in pertinent part:

Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any . . . recording device, . . . records such confidential communication, whether such communication is carried on among such parties in the presence of one

another or by means of a ... telephone ... is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison not exceeding three years, or by both such fine and imprisonment in the county jail or in the state prison.

Although the violation of the statute subjects a person to criminal penalties, "[a]ny person who has been injured by a violation of ... [§ 632] may bring an action against the person who committed the violation...." Cal.Penal Code § 637.2 (West. 1967). A plaintiff who successfully pursues a suit predicated on this section can recover injunctive relief and the greater of the following two amounts: three thousand dollars ($3,000.00) per violation or three times the amount of actual damages, if any, sustained by the plaintiff." *Id.* The last subpart of section 637.2 declares that: "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." *Id.*

### (1) Is the California Statute Penal In Nature?

As mentioned earlier, plaintiff contends first that because the California statute upon which defendant's counterclaim is premised is unenforceable in Texas as such statute is penal in nature, it is futile to allow amendment. Plaintiff asserts that the statute is penal in nature because the statute subjects a person convicted of violating the statute to criminal penalties and provides a private litigant in a civil suit damages in the amount of $3,000 or three times the amount of actual damages, whichever amount is greater, regardless of whether the person pursuing the claim sustained actual damages. Finally, plaintiff asserts that the California statute prohibits conduct which is not prohibited in Texas, and indeed, pursuant to article 9019, such conduct is authorized in Texas. *See* Tex. Rev.Civ.Stat.Ann. art. 9019 (Vernon Supp. 1982).[1]

Courts faced with the task of determining whether a statute is penal in nature need not venture upon uncharted seas for the standard of analysis has been defined since the case of *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed.2d 1123 (1892):

The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual, according to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts or species: *private wrongs* and *public wrongs.* The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals; and are thereupon frequently termed *civil injuries*: the latter are a breach and violation of public

---

1. Article 9019, entitled Interception of Communications; Civil Remedies and Criminal Penalties, provides in pertinent part:

Section 1. In this Act:
(a) "Communication" means speech uttered by any person and any information including speech transmitted in whole or in part with the aid of wire or cable.
(b) "Interception" means the aural acquisition of the contents of any communication through the use of an electronic, mechanical, or other device without the consent of a party to the communication.
Sec. 2. (a) A party to a communication may bring a civil action in a court of competent jurisdiction against any person, including a corporation or association, who:
(1) intercepts, attempts to intercept, or employs or obtains the services of another person to intercept or attempt to intercept the communication;
(2) uses or divulges information that he knows, or reasonably should have known, was obtained by intercepting the communication.

. . . .

(b) In a suit filed under this section, a person who establishes a cause of action is entitled to:
(1) an injunction prohibiting further interceptions, attempted interceptions, or divulgence or use of information obtained by interception;
(2) statutory damages of $1,000;
(3) all actual damages in excess of $1,000;
(4) any punitive damages the court or jury may award; and
(5) reasonable attorney's fees and costs.

rights and duties, which affect the whole community, considered as a community; and are distinguished by the harsher appellation of *crimes* and *misdemeanors.*' *Id.* at 668–69, 13 S.Ct. at 228 (emphasis in original). On the basis of the Supreme Court's opinion and its progeny, the Sixth Court in *Murphy v. Household Finance Corp.,* 560 F.2d 206, 209 (6th Cir. 1977), distilled three factors to be used in determining whether a statute is penal:

(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether the recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.

See also *First National Bank & Trust Company of Macon v. Flatau (In the Matter of Wood),* 643 F.2d 188, 191 (5th Cir. 1980).

▪ Contrary to the assertion of plaintiff that section 637.2 is penal in nature, the application of the test set forth above does not clearly indicate that this is so. Certainly, the statute does provide that upon proof of a violation of the Invasion of Privacy Act, the aggrieved party may recover the greater amount of three thousand dollars or three times the amount of actual damages, if any, sustained by the aggrieved party. That a portion of such damages is statutorily set rather than being subject to proof like most remedial statutes, or the fact that the statute imposes liability beyond the amount of damages actually suffered, however, does not necessarily make the statute penal. *See Brady v. Daly,* 175 U.S. 148, 154–57, 20 S.Ct. 62, 64–65, 44 L.Ed. 109 (1899). As it has been explained:

The action of an owner of property against the hundred to recover damages caused by a mob was said by *Justices* Willes and Buller to be 'penal against the hundred, but certainly remedial as to the sufferer.' *Hyde v. Cogen,* 2 Dougl. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a *qui tam* action to be brought by any other person for threefold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer. *Bones v. Booth,* 2 W.Bl. 1226; *Brandon v. Pate,* 2 H.Bl. 308; *Grace v. M'Elroy,* 1 Allen, 563; *Read v. Stewart,* 129 Mass. 407, 410; *Cole v. Groves,* 134 Mass. 471. As said by *Mr. Justice* Ashhurst in the King's Bench, and repeated by *Mr. Justice* Wilde in the Supreme Judicial Court of Massachusetts, 'it has been held, in many instances, that where a statute gives accumulative damages to the party grieved, it is not a penal action.' *Woodgate v. Knatchbull,* 2 T.R. 148, 154; *Read v. Chelmsford,* 16 Pick. 128, 132. Thus a statute giving to a tenant, ousted without notice, double the yearly value of the premises against the landlord, has been held to be 'not like a penal law where a punishment is imposed for a crime,' but 'rather as a remedial than a penal law,' because 'the act indeed does give a penalty, but it is to the party grieved.' *Lake v. Smith,* 1 Bos. & P.(N.R.) 174, 179, 180, 181; *Wilkinson v. Colley,* 5 Burr. 2694, 2698. So in an action given by statute to a traveler injured through a defect in a highway, for double damages against the town, it was held unnecessary to aver that the facts constituted an offense, or to conclude against the form of the statute, because as *Chief Justice* Shaw said: 'The action is purely remedial, and has none of the characteristics of a penal prosecution. All damages for neglect or breach of duty operate to a certain extent as punishment; but the distinction is that it is prosecuted for the purpose of punishment, and to deter others from offending in like manner. Here the plaintiff sets out the liability of the town to repair, and an injury to himself for failure to perform that duty. The law gives him enhanced damages; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity. *Reed v. Northfield,* 13 Pick. 94, 100, 101.

*Huntington v. Attrill, supra,* 146 U.S. at 667–68, 13 S.Ct. at 231–32. *See also First National Bank & Trust Company of Macon*

v. Flatau (In the Matter of Wood), supra, at 193; *Murphy v. Household Finance Corp., supra,* at 210 & n.5; *Porter v. Household Finance Corp. of Columbus,* 385 F.Supp. 336, 340–41, 343 n.10 (S.D.Ohio 1974). Moreover, in many instances such as the instant cause, actual damages may be difficult to ascertain. *Brady v. Daly, supra,* 175 U.S. at 154, 20 S.Ct. at 64. Consequently, "a liability is not penal merely because greater than 'Actual Damages' are imposed. The true test is whether the wrong to be remedied or punished is primarily to the individual or the state." *Porter v. Household Finance Corp. of Columbus, supra,* at 341. Undeniably, the damages recovered by a prevailing party pursuant to section 637.2 are for his own use and not for the benefit of the public at large. Accordingly, the restitution provided by the statute is not penal.

■ Despite this indicator that the statute has a remedial purpose and is intended to redress individual wrongs, section 637.2 does have a criminal counterpart. More importantly, the section is a part of a comprehensive act, the purpose of which has been interpreted to deter wrongful conduct. *Ion Equipment Corp. v. Nelson,* 110 Cal.App.3d 868, 880, 168 Cal.Rptr. 361, 366 (Cal.Ct.App.1980); *Warden v. Kahn,* 99 Cal. App.3d 805, 810, 160 Cal.Rptr. 471, 474 (Cal. Ct.App.1979). Hence, although an examination of the Invasion of Privacy Act, and specifically, section 637.2, in light of the interpretive case law reveals that the section serves the dual purpose of providing a remedy for the unauthorized intrusion into an individual's privacy while serving to deter wrongful conduct by penalizing those who violate its provisions, the Court is nevertheless of the opinion that section 637.2 is more remedial than penal. Accordingly, the Court concludes that the courts of this State would enforce a cause of action arising out of such statute.

### (2) Does the California Statute Violate Texas Public Policy?

Plaintiff argues next that because Texas law permits invasions of privacy of the type made the basis of defendant's counterclaim, section 637.2 violates Texas public policy.

■ It is not the law of this State that Texas courts will refuse to apply the law of another jurisdiction simply because that law is inconsistent or contrary to Texas law. Rather, the maxim which governs this Court is that the "Texas courts will not enforce a foreign law that violates good morals, natural justice or is prejudicial to the general interests of its citizens." *Gutierrez v. Collins,* 583 S.W.2d 312, 321 (Tex. 1979). *See also Robertson v. McKnight,* 609 S.W.2d 534, 537 (Tex.1980); *Castilleja v. Camero,* 414 S.W.2d 424 (Tex.1967), *State of California v. Copus,* 158 Tex. 196, 309 S.W.2d 227 (1958), *cert. denied,* 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074 (1958).

■ While Texas does not provide a remedy for the surreptitious recording of telephone conversations where only one party to the conversation consents, Texas does recognize a cause of action for invasion of the right to privacy. *Ex parte Abell,* 613 S.W.2d 255, 265 (Tex.1981) (Spears, J., dissenting); *Industrial Foundation of South v. Texas Indus. Accident Bd.,* 540 S.W.2d 668 (Tex.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); *Billings v. Atkinson,* 489 S.W.2d 858, 859–60 (Tex. 1973); *Moore v. Charles B. Pierce Film Enterprises, Inc.,* 589 S.W.2d 489, 490 (Tex.Civ. App.—Texarkana 1979, writ ref'd n. r. e.); *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Southwestern Bell Tel. Co. v. Ashley,* 563 S.W.2d 637 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.); *Gonzales v. Southwestern Bell Tel. Co.,* 555 S.W.2d 219 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Cullum v. Government Employees Financial Corp.,* 517 S.W.2d 317 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.). Indeed, the Texas legislature, with one significant exception pertinent to the instant cause, has even enacted a statute similar to the California statute which is the basis of defendant's proposed counterclaim. *See* Tex.Rev.Civ.Stat.Ann. art. 9019 (Vernon Supp.1982). The Texas statute, like the California statute, prohibits audial

prying into conversations and prescribes criminal penalties and civil remedies for the violation of the statute. The Texas statute exempts for its coverage, however, communications which are intercepted with the consent of one of the parties to the communication. *Id.* Thus, while defendant has a right of recovery under the California statute, defendant has no claim under the Texas statute as plaintiff was a consenting party to the conversations which were recorded. The fact that the State of California has sought to protect its citizens' rights to privacy to a greater degree than the State of Texas, and apparently a number of states also recognize such rights, *see* 11 A.L.R.3d 1296 (1967), does not provide a sufficient basis to support a finding that the California statute violates "good morals, natural justice or is prejudicial to the general interests of its citizens." Consequently, the Court concludes that plaintiff's argument that the California statute violates the public policy of this State is meritless.

### (3) Choice-of-Laws

As the basis of the Court's subject matter jurisdiction over this case is diversity of citizenship, *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), mandates that this Court apply the law of the forum state. Consequently, the Court is compelled to apply the choice-of-law rules of Texas. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Lockwood Corp. v. Black,* 669 F.2d 324, 327 (5th Cir. 1982); *Cox v. McDonnell-Douglas Corp.,* 665 F.2d 566, 568 (5th Cir. 1982); *Crim v. International Harvestor Co.,* 646 F.2d 161, 163 (5th Cir. 1981); *Automated Medical Laboratories, Inc. v. Armour Pharmaceutical Co.,* 629 F.2d 1118, 1122 n.3 (5th Cir. 1980).

The Texas Supreme Court has recently made a major change in this State's choice-of-law analysis in a tort case. Rejecting the long standing rule of *lex loci delicti,* the Supreme Court of Texas adopted the "most significant relationship" test, the more flexible approach to conflict questions found in sections 6 and 145 of the Restatement (Second) of Conflicts. *Gutierrez v. Collins, supra,* at 318. *See also Duncan v. Cessna Aircraft Co.,* 632 S.W.2d 375 (Tex. Civ.App.—Austin 1982, no writ) (available May 18, 1982, on LEXIS, Genfed library, Tex. file); *Baron v. Mullinax, Wells, Mauzy & Babb, Inc.,* 623 S.W.2d 457 (Tex.Civ.App. —Texarkana 1981, no writ). "The court's analysis under [this] rule does not turn on the number of contacts the event had with each jurisdiction, but, more importantly, on the qualitative nature of those contacts as they are affected by the policies of the rule." *Crim v. International Harvestor Co., supra,* at 163; *Gutierrez v. Collins, supra,* at 319. In the utilization of the "most significant relationship" test as set forth in the Restatement, a court faced with a problem involving more than one jurisdiction must undertake a factual and legal analysis involving numerous factors which are set out below.

Section 6 of the Restatement (Second) of Conflict of Laws sets out the general principles to be applied in this type of analysis. Section 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Section 145 of the Restatement details the factual matters to be considered while

applying the section 6 principles to a given case. Section 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

With the choice-of-law standard clearly in mind, the question then becomes, which state, Texas or California, has the more significant relationship? Defendant argues that California law should control the disposition of its counterclaim as California, not Texas, has a more significant relationship to the instant controversy. Naturally, plaintiff counters this assertion with his claim that a review of the facts in the case *sub judice* reveals that Texas has a more significant relationship with the instant cause. Plaintiff's point is well taken.[2]

■ Applying section 145 to the facts of this case, the following contacts are relevant. First, the injury occurred in California. Defendant's employees were in California at the time plaintiff recorded their conversations, and accordingly, their rights to privacy were invaded in California. Second, the conduct causing the injury occurred primarily, if not completely, in Texas. At the time plaintiff surreptitiously recorded defendant's employees' conversations, plaintiff was located in Texas. Third, the domicile, residence, nationality, place of incorporation and place of business of the parties is quite diverse. Plaintiff is a resident of Texas. Defendant, on the other hand, is a Nevada corporation with its principal place of business in California. Petition For Removal at 2. Defendant is licensed to do business in Texas, is conducting business in Texas, has a registered agent in Texas, Plaintiff's Original Petition at 1, and has corporate offices in Texas. Fourth, the direct relationship between the parties is centered in Texas. Plaintiff was hired by defendant in May, 1979 for the position of Account Manager in the Houston office of defendant's Information Network Division.

The contacts set forth above must be considered in light of the principles enumerated in section 6 of the Restatement (Second) of Conflict of Laws.

### (a) Needs of the Interstate System

"Choice-of-law rules, among other things, should seek to further harmonious relations

---

**2.** On the basis that "comment (a) to Section 145 explains that 'rules of greater precision' are available in certain instances," Memorandum of Law in Support of Defendant's Motion for Leave to File Amended Answer and Counterclaim at 7, defendant asserts that section 152 of Restatement (Second) of Conflict of Laws is the rule of conflicts that should be applied in determining whether the law of Texas or California should be applied in this case. Section 152, entitled Right to Privacy, provides:

In an action for an invasion of a right of privacy, the local law of the state where the invasion occurred determines the rights and liabilities of the parties, except as stated in § 153, unless, with respect to the particular issue, some other state has a more significant

relationship under the principles states in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 152 (1971). Defendant asserts further that as the invasion of the right to privacy occurred in California, "Texas courts would apply and enforce the California civil cause of action for invasion of privacy, *unless Section 6 requires a different result.*" *Id.* (emphasis added). As discussed in detail in the body of the Court's Order, the Court concludes that the application of the principles contained in section 6 requires that Texas law, rather than California law, should be applied in this cause.

between states and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6 comment d (1971). The decision that this Court renders as to whether defendant should be permitted to amend his answer to plead a counterclaim is not likely to have any great interstate repercussions nor have any discernible effect on commercial intercourse between the States of Texas and California. Consequently, the Court's analysis of this factor is inconclusive and of no assistance in indicating which jurisdiction's law should apply.

#### (b) The Relevant Policies of the Forum

Texas has exhibited definite policies with regard to the issues raised by defendant's counterclaim. The Texas legislature has enacted a statute similar to the California statute upon which defendant's counterclaim is based. See Tex.Rev.Civ.Stat.Ann. art. 9019 (Vernon Supp.1982). In so doing, Texas has recognized a paternalistic interest in protecting the rights of privacy of its citizens, and specifically, an interest in protecting its citizens from the unauthorized interception and divulgence of its citizen's communications. The Texas legislature has not gone as far as the California legislature, however, as article 9019 exempts from its scope communications which are intercepted with the consent of one of the parties to the communication. Consequently, under Texas law, defendant has no recognizable claim.

Texas has an interest in seeing its policies applied to this case separate and apart from its status as the forum; plaintiff is a Texas resident and was located in Texas at the time plaintiff recorded his telephone conversations with defendant's employees. Texas is therefore concerned with the application of its own laws to its own citizens, especially where one of its citizens performed the subject actions while located in Texas. Texas also has an overriding interest in governing the conduct of persons situated within its borders. Moreover, persons within Texas, regardless of whether or not they are citizens, have a right to rely on

and to act in conformity with Texas' laws. Hence, Texas has a real interest in seeing its laws applied.

#### (c) The Relevant Policies of Other States

California has taken an interest in the right of privacy of its citizens. See Cal.Penal Code § 630 (West 1967). In recognition of the

> advances in science and technology [which] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties,

id., the California Legislature enacted a comprehensive statute prescribing criminal sanctions and civil remedies for nonconsensual audial interception. As mentioned earlier, the California Legislature in section 632 went beyond a similar Texas statute, see Tex.Rev.Civ.Stat.Ann. art. 9019 (Vernon Supp.1982), by prohibiting the interception of communications where all parties to the communication do not consent. Thus, it is evident that California has a discernible interest in protecting its citizen's, in this case defendant's employee's, right to privacy.

#### (d) Protection of Justified Expectations

This factor is of importance in this case as plaintiff claims that he relied upon the laws of the State of Texas when he recorded his conversations with defendant's employees. This reliance is undeniably justified as plaintiff was located in Texas when the subject recordings were made.

#### (e) Basic Policies Underlying Particular Field of Law

The commentary to section 6 states that:

> This factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between the relevant local law rules. In such instances, there is good

reason for the court to apply the local law of the state which will best achieve the basic policy, or policies, underlying the particular field of law involved.

Restatement (Second) of Conflict of Laws § 6 comment h (1971).

As mentioned earlier, the basic policy behind the Texas and California statutes is similar; the protection of rights to privacy of its citizens. The significant difference between the two statutes is that unlike its Texas counterpart, the California statute affords greater protection to its citizens by prohibiting the unauthorized eavesdropping on confidential communications by an electronic amplifying or recording device, where all of the parties to the communication do not consent. Thus, it is evident that the law of California best achieves the basic policy underlying the relevant issue, *i.e.*, the protection of rights to privacy. Accordingly, this factor supports defendant's argument that California law should be applied.

### (f) Certainty, Predictability and Uniformity of Result
### and
### (g) Ease in Determination and Application of the Law to be Applied

These factors strongly support the use of Texas law. Because Texas is the forum state, this Court is familiar with the Texas law relevant to defendant's proposed counterclaim. Although it would certainly not be impossible for the parties to instruct this Court on the nature of the relevant California law, it would undoubtedly be a more difficult task than the parties would bear if Texas law is required. In addition, the ease with which the law of Texas can be determined and applied as opposed to that of California will certainly assist in the achievement of predictability and uniformity of result.

In sum, based upon the foregoing analysis this Court concludes that Texas rather than California has a significant aggregation of contacts of a more qualitative nature with the parties and the instant controversy, and accordingly, Texas law rather than California law should be applied

in the case *sub judice*. Consequently, as Texas law does not recognize the cause of action contained in defendant's counterclaim, it would be futile for the Court to grant defendant's motion for leave to file its amended answer and counterclaim. Accordingly, the Court denies defendant's motion for leave to amend.