**Whittaker PAPPION, et ux.**

v.

**The DOW CHEMICAL CO., et al.**

**Civ. A. No. 83–2034.**

United States District Court, W.D. Louisiana, Lake Charles Division.

Sept. 14, 1984.

tees for attorneys' fees. *See* 567 F.Supp. at 243.

Provost, Umphrey, McPherson & Swearingen, Walter Umphrey, Port Arthur, Tex., for plaintiffs.

Jerry Kacal, Wyckoff, Russel, Dunn & Frazier, Houston, Tex., for Dow Chemical Co.

Milling, Benson, Woodward, Hillyer & Pierson, New Orleans, La., for Joseph E. LeBlanc, Jr.

Thomas M. Bergstedt, Scofield, Bergstedt, Gerard, Mount & Veron, Lake Charles, La., for Moore & Munger, Inc.

L. Harvard Scott, III, and Harry McCall, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for E.I. DuPont de Nemours & Co.

John G. Bissell, Strong, Pipkin, Nelson & Bissell, Beaumont, Tex., for Union Carbide Corp.

David W. Ledyard, Strong, Pipkin, Nelson & Bissell, Beaumont, Tex., for Goodyear Tire & Rubber Co.

Robert W. Clements, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, La., for Shell Oil Co., Texaco, Cities Service, Sun Oil, Mobil Oil, BP Oil & Exxon.

John E. Bergstedt, Brame, Bergstedt & Brame, Lake Charles, La., for Monsanto Co.

Edmund E. Woodley, Woodley, Barnett, Cox, Williams, Fenet & Palmer, Lake Charles, La., for Cypress Indus. Minerals Co.

William T. McCall, Guillory & McCall, Lake Charles, La., Arthur R. Almquist, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for Uniroyal, Inc.

Michael S. O'Brien, Lafayette, La., for Ribelin Sales, Inc.

Dale Dowell, Rienstra, Rienstra & Dowell, Beaumont, Tex., for Mallinckrodt, Inc.

Robert Scott, Sewell & Riggs, Houston, Tex., for Penwalt Corp.

Frederick L. Cappel, Raggio, Cappel, Chozen & Berniard, Lake Charles, La., for Milwhite Co., Inc.

## 430

William M. Nolen, Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, La., for C.P. Hall Co.

John A. Bivins, Mouton & Roy, Lafayette, La., for Whittaker, Clark & Daniels, Inc.

Randy J. Fuerst, Camp, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, Lake Charles, La., for Nalco Chemical Co.

### RULING

NAUMAN S. SCOTT, District Judge.

This matter is before the court on a Motion to Strike Plaintiff's Claim for Punitive Damages pursuant to Rule 12(f) of the Federal Rules of Civil Procedure filed by defendants E.I. du Pont de Nemours & Company and Ribelin Sales, Inc., joined in the same by defendants, Union Carbide Corporation, Uniroyal, Inc., Exxon Corporation, B.F. Goodrich Company and Mallinckrodt, Inc., on the grounds that said punitive damages are not recoverable under Louisiana law and on defendant Whittaker, Clark & Daniels, Inc.'s Motion for Summary Judgment.

### FACTS

The plaintiffs allege that Whittaker Pappion was employed for some time by Firestone Synthetic Rubber & Latex Company, at its Lake Charles, Louisiana facility, in various capacities, primarily as a tank and vessel cleaner and water gun operator, and was exposed to various chemical products manufactured and/or distributed by the defendants in this proceeding. Specifically, they allege that Mr. Pappion was exposed to the chemical Phenyl Betanapthylanine (PBNA) and/or that class of organic chemicals known as amines, and suffered injury as a result of such exposure coupled with defendant's alleged negligent failure to warn its employees that those chemicals could be harmful or possibly carcinogenic. Plaintiffs have asked for both actual and exemplary or punitive damages.

Originally this action was brought in the Eastern District of Texas, Beaumont Division, on June 13, 1983. It was subsequently transferred to this court pursuant to 28 U.S.C. § 1404. Thereafter, Mr. Pappion became deceased.

### MOTION TO STRIKE CLAIM FOR PUNITIVE DAMAGES

Defendants seek to have the court strike from plaintiffs' complaint all references to punitive or exemplary damages. We grant those motions for the following reasons.

■ 1. *Venue and Choice of Law.* Plaintiffs argue that since the Eastern District of Texas first had jurisdiction and venue over this case, this Court must apply the law that the transferor court would have applied. Thus they claim that Texas law would apply and punitive damages are recoverable.

Defendants counter by claiming that since this court is sitting in Louisiana it is compelled to apply the choice of law rules of the State of Louisiana and apply Louisiana law which denies such recovery. Additionally, they argue that even if Texas law is applicable, the choice of law rules of the State of Texas would require application of Louisiana law.

This is a diversity suit. The original defendants, The Dow Chemical Company and the B.F. Goodrich Company, at the time of the filing of plaintiffs' original complaint, were then and are now citizens of states other than that of the plaintiffs, doing business in Texas, and the controversy plead was in excess of $10,000. Therefore, jurisdiction was properly had in the Eastern District of Texas. The only question raised was whether venue was proper or not.

Section 1391(c) of Title 28, United States Code, provides in pertinent part:

"A corporation may be sued in any judicial district in which it is ... licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

There can be no question that the Eastern District of Texas had venue. Both original

defendants were licensed to do business and were actually doing business in that district when suit was filed, and thus the case was not improperly brought there. *See, Cowan v. Ford Motor Co.,* 719 F.2d 785 (5th Cir.1983); 28 U.S.C. § 1391(a) (civil action based on diversity may be brought where all defendants *reside*) (emphasis added). However, the case was then properly transferred to this court because the plaintiffs reside here, this is where the claim arose and the action might have been properly commenced here as reflected in plaintiffs' original complaint. *See,* 28 U.S.C. § 1404(a).

The United States Supreme Court has stated that a change of venue under § 1404(a) is not accompanied by a change in the choice of State law to be applied. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945, 962 (1964); *Cowan v. Ford Motor Co.,* 713 F.2d 100, 104 (5th Cir.1983). It is merely a change of courtrooms. *Id.* Therefore, since the Eastern District of Texas, under mandate of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), was to apply Texas law, we hold that the choice of law rules of the State of Texas govern the present case. *See, Klaxon Company v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480 (1941); *Lockwood Corp. v. Black,* 669 F.2d 324, 327 (5th Cir.1982).

2. *Louisiana or Texas Law?* The Texas Supreme Court has adopted the "most significant relationship" test to resolve conflicts of law questions. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984); *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.1979); *Becker v. Computer Sciences Corp.,* 541 F.Supp. 694, 703 (S.D.Tex.1982). Under this test, the Court must follow the guidelines of sections 6 and 145 of the Restatement (Second) of Conflicts. *Gutierrez,* 583 S.W.2d at 318. Without reproducing the guidelines of section 145, as we feel it is unnecessary given the facts of the present case, it is clear that Louisiana substantive law should apply: (1) all plaintiffs reside in Louisiana; (2) the alleged expo-

sure to chemical substances occurred in Louisiana; (3) the injury to Mr. Pappion was initiated and developed in Louisiana; and (4) the relationship between the parties was spawned by Mr. Pappion's employment in Louisiana.

Then, once determined, the contacts set forth above must be considered in light of the principles enumerated in section 6 of the Restatement. That consideration is as follows:

(a) *Needs of the Interstate System.* "Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6, comment d (1971). It is not likely that the disposition of this one personal injury case will have any great repercussions on interstate commercial intercourse. Consequently, the Court's analysis of this factor is inconclusive and of no assistance in indicating which law should apply. *Cf., Becker,* 541 F.Supp. at 705.

(b) *The Relevant Policies of Texas.* Plaintiffs contend that Texas has exhibited a definite policy with regard to punitive or exemplary damages since the Texas Constitution provides that:

"Every person, corporation, or company, that may commit a homicide, through willful act, or omissions, or gross neglect shall be responsible in exemplary damages, to the surviving husband, widow, heirs, or his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

Texas Constitution, Art. XVI, Section 26 (1876). Plaintiffs also contend that the purpose of these exemplary damages is to punish the wrongdoer and deter him from future similar acts. This may be true. However, without deciding one way or the other on the purpose or correctness of such damages in this case, the Court finds that Texas has no real interest in the outcome of the present action. While it may be correct to say that Texas has an overriding

interest in governing the conduct of persons situated within its borders, it is as equally correct to point out that none of the alleged offensive conduct in this case took place in Texas. There is. no reason why a Louisiana branch or subsidiary of a corporation should be scrutinized under a Texas policy. The only connection is that the two original defendants have facilities in Texas. If this were enough, then every multistate corporation in America would be subject to a course of jurisprudence that would require policies from any state to apply to any facility depending·upon which particular facility plaintiff named in. its complaint, regardless of its connection to the case. Hence, we cannot take plaintiffs' argument seriously.

(c) *The Relevant Policies of Louisiana.* Louisiana law has uniformly denied recovery of punitive, vindictive or exemplary damages. *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293, 1318 (5th Cir.1982); *Ricard v. State of Louisiana,* 390 So.2d 882, 884 (La.1980); *Killebrew v. Abbott Laboratories,* 359 So.2d 1275 (La. 1978); *Alexander v. Burroughs Corporation,* 359 So.2d 607, 610 (La.1978); *Commercial Union Ins. Co. v. Upjohn Company,* 409 F.Supp. 453 (W.D.La.1976). Therefore, where its citizens are concerned, it has a keen interest in upholding such a policy.

In this case, the decedent, Mr. Whittaker Pappion, was at all times a resident of and domiciled in the State of Louisiana. His entire work and employment history was in Louisiana. All of the decedent's alleged exposure to chemicals of the various defendants occurred in Louisiana. The decedent's employer, Firestone Synthetic Rubber & Latex Company, employed him at its Lake Charles, Louisiana facility. Plaintiff, decedent's widow, is now and has been a resident of Louisiana at all pertinent times. Hence, Louisiana has a real interest in seeing its laws applied.

(d) *Protection of Justified Expectations.* Plaintiffs make no claims that they have relied on any particular law in bringing this suit; instead, they merely point to their original choice of Texas as a forum as evidence of their expectations. We find this an unjustified reliance and more likely evidence of forum shopping. Thus this factor is of little importance in the making of the Court's choice.

(e) *Basic Policies Underlying Particular Field of Law.* As mentioned earlier, the states involved here differ in their respective policies; however, since the Court has pointed out that what this case presents is basically a "false conflict", with all contacts being in Louisiana, we find this factor also of little importance.

(f) *Certainty, Predictability and Uniformity of Result,* and

(g). *Ease in Determination and Application of the Law to be Applied.* These factors strongly support the use of Louisiana laws. As stated previously, all contacts relevant to plaintiffs' claim are with Louisiana. Also, this Court, since it sits in Louisiana, is more familiar with Louisiana law. To paraphrase Judge Bue in the *Becker* case, while it would certainly not be impossible for the parties to instruct this Court on the nature of the relevant Texas law, it would undoubtedly be a more difficult task than the parties would bear if Louisiana law is required. In addition, the ease with which the law of Louisiana can be determined and applied as opposed to that of Texas will certainly assist in the achievement of predictability and uniformity of result.

In sum, based upon the foregoing analysis this Court concludes that Louisiana, rather than Texas, has a significant aggregation of contacts of a more qualitative nature with the parties and the instant controversy, and accordingly, Louisiana law rather than Texas law should be applied in the case *sub judice.* Consequently, as Louisiana law does not. recognize the recovery of punitive or exemplary damages, the motions to strike by the above named defendants are hereby GRANTED.

MOTION FOR SUMMARY JUDGMENT

■ Defendant, Whittaker, Clark & Daniels, Inc. (Whittaker), has filed its Motion for Summary Judgment in this matter, based on the proposition that defendant has never manufactured or sold any of the products characterized as "amines, BPNA and extender oils" of which plaintiff complains. In support, defendant has filed the affidavit of one George Dippold, vice-president in charge of manufacturing, laboratory and product functions at Whittaker.

Plaintiffs respond to this by claiming that in both their original complaint and their First Amended Petition they stated that other chemicals to be discovered would be included in the case. Additionally, plaintiffs claim that they have filed with this Court a Motion for Leave to File Amended Complaint, in which amendments they refer specifically to "talc", a substance they claim was manufactured by Whittaker. In support of their position, they attach a Firestone specification for Texas Talc 2619. In the body of this document it states that "Texas Talc 2619 is the trade name for calcium silicate from Whittaker."

The general principle for use of Rule 56 summary judgment in our Circuit is as follows:

"The summary judgment vehicle is to be used sparingly, particularly in complex litigation, but it is available, despite apparent complexity, in a case in which there is no genuine issue of material fact in dispute. *Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 303 (5th Cir.1984).

Clearly in the case at hand there are genuine issues of material fact in dispute. Plaintiffs, by producing the name of Whittaker from the Firestone records as having supplied "talc", a finely ground powder containing various amounts of crystalline-free silica and asbestiform fibers, have at the very least kept open the issue of whether Whittaker sold or manufactured materials which caused or contributed to the injury. Therefore, defendant Whittaker's Motion for Summary Judgment is hereby DENIED.